**TRINITY CONSTRUCTION CO., Inc., Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 27448.

United States Court of Appeals, Fifth Circuit.

April 6, 1970.

Rehearing Denied April 27, 1970.

Robert K. Jewett, William C. Griffith, Houston, Tex., for plaintiff-appellant; Baker, Botts, Shepherd & Coates, Houston, Tex., of counsel.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Issie L. Jenkins, Attys., Tax Division, U. S. Dept. of Justice, Washington, D. C., for defendant-appellee.

Before GEWIN, THORNBERRY and AINSWORTH, Circuit Judges.

THORNBERRY, Circuit Judge.

This is an action for the recovery of federal income taxes and interest for the fiscal year ending February 28, 1959, of Bellco Industrial Engineering Company. Bellco was merged into Trinity Construction Company, Inc., appellant, on December 31, 1961. The taxes were assessed as a deficiency against Bellco, and were paid by Trinity as the transferee of Bellco pursuant to their merger. Trinity filed a claim for refund of the taxes in the United States District Court for the Southern District of Texas. The cause was tried to the court on September 9, 1968, and the district judge held for the government. Trinity appeals.

Prior to its merger with Trinity in 1961, Bellco maintained its books and records on the accrual basis of accounting, and filed its federal income tax returns utilizing the accrual method of reporting and a fiscal year ending on the last day of February of each year. For several years prior to 1958, Harry Catlow and Eldon Wolcott had been the chief employees of Bellco and were responsible for the day-to-day direction of the corporation. They were not stockholders in either Bellco or Trinity.

The two men were compensated under a profit participation arrangement whereby they received fifty percent of the annual net profits of Bellco. By written agreements dated February 17, 1958, Bellco agreed to purchase for Catlow and Wolcott life insurance policies in the face amount of $87,861. Bellco was to pay the annual premiums thereon for each of the next ten years; the premiums were to be paid as they became due each year. Catlow and Wolcott were the sole owners of the policies and had the sole right to designate or change beneficiaries. The agreements, however, contained two conditions. First, the two men were not to engage in the construction business in Harris County, Texas (the principal place of business of Bellco) for a period of one year after the date of the agreement. Secondly, Bellco agreed to pay the annual premium only while the insured was living and all payments were to cease upon the death of the insured. Each agreement was made binding on the successors and assigns of each party to the agreement. The life insurance policies were issued on June 26, 1958, and Bellco paid the premiums as required under the contracts through June 26, 1961.

In the fall of 1959, Bellco's stockholders decided to terminate the employment of Catlow and Wolcott. The two men left the company in the early part of 1960. In the latter part of 1961, Bellco's stockholders decided to merge the company into Trinity. Pursuant to this decision, Bellco entered into a trust agreement dated December 18, 1961, and delivered the sum of $91,849.72 to a duly constituted trustee. The trust agreement provided that the trustee's sole responsibility to Bellco would be to disburse the six remaining annual premiums and cash disbursements due under the contracts with Bellco's former employees, Catlow and Wolcott. Neither Catlow nor Wolcott was a party to the trust agreement. Catlow and Wolcott did not consent to the trust agreement, and, in fact were not aware of the agreement until they were notified of it on June 26, 1962, the due date of the next premiums. At no time did Catlow and Wolcott release Bellco, or its successors or assigns, from the obligations due them under the 1958 contracts. Thus the 1958 contract obligations of Bellco to Catlow and Wolcott were not affected by the 1961 trust agreement.

Bellco's final federal income tax return, filed on December 31, 1961, reported a net operating loss in the sum of $114,142.52. On that return, Bellco claimed the following deduction: "Payment in Final Settlement of Contract Per Agreement 12–15–61: $91,849.72." Bellco did not designate the $91,849.72 delivered to the trustee as a deferred compensation payment deductible under section 404 of the Internal Revenue Code of 1954.

Bellco filed an Application for Tentative Carryback Adjustment with the Internal Revenue Service, requesting that the claimed net operating loss totaling $114,142.52 for the period ending December 31, 1961 be carried back to its fiscal year ending February 28, 1959. The claimed net operating loss carryback served to reduce the liability of Bellco for its fiscal year ending in February of 1959, and Bellco requested that it be refunded taxes totaling $59,354.11. The requested refund was made to Bellco in 1962.

Upon audit of Bellco's return for the period ending December 31, 1961, the Commissioner disallowed the deduction claimed by Bellco totaling $91,849.72 for "Payment in final settlement under contract per agreement 12–15–61." The disallowance by the Commissioner of the deduction reduced Bellco's claimed net operating loss and thereby resulted in a deficiency in taxes paid by it for the period ending February 28, 1959, in the sum of $47,761.86. A timely deficiency assessment for fiscal 1959 taxes and interest was made and subsequently paid. This suit for recovery resulted.

■ As noted above, Bellco kept its books and records on the accrual basis, and filed its federal income tax returns

on that basis. Section 461(a) of the Internal Revenue Code of 1954 provides that the amount of any deduction allowed shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income. Section 1.461–1(a) (2) of Treasury Regulations on Income Tax states:

> (2) *Taxpayer using an accrual method.* Under an accrual method of accounting, an expense is deductible for the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy.

As a general rule the existence of a contingency in the taxable year with respect to a liability or its enforcement prevents accrual. Accrual of a deduction item is permitted only in the taxable year when the obligation to pay it is unconditionally fixed. Brown v. Helvering, 1933, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725; Security Flour Mills Co. v. Commissioner of Internal Revenue, 1944, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725; Whitaker's Estate v. Commissioner of Internal Revenue, 5th Cir. 1958, 259 F.2d 379.

■ Thus we must decide whether there was a definite, fixed and existing obligation by Bellco of $91,849.72 to Catlow and Wolcott accruable during fiscal 1961. We hold that there was not. Bellco's obligation to Catlow and Wolcott in 1961 was to pay the annual premiums on their insurance policies *due that year.* In the taxable period ending December 31, 1961, however, Bellco's obligation to pay the six remaining annual premiums was contingent on Wolcott or Catlow being alive at the due date of each of those remaining installments. While the lump-sum amount was deposited with the trustee in 1961, if either insured died before any of the six remaining installments were paid, Bellco would not be obligated to pay the premiums as to the deceased and the deposit would be returnable to Bellco or its assigns. Thus all of the events that would determine the fact of Bellco's liability to pay the remaining six installments had not occurred in 1961 so as to make the lump-sum payment to the trustee deductible in that year. Under this analysis, the claimed deduction of $91,849.72 was properly disallowed.

■ Appellant, however, seeks to avoid this result by arguing that the 1958 agreements between Bellco and Catlow and Wolcott, and the 1961 trust arrangement made in supposed settlement of the 1958 contracts, were deferred compensation plans subject to and controlled by Section 404(a) of the Internal Revenue Code of 1954. Appellant further argues that the $91,849.72 was deductible in 1961, the year that the contribution was made to the trustee, because the employee's rights to or derived from such contribution were nonforfeitable within the meaning of Section 404(a) (5).

The government counters by asserting that the lump sum "settlement" payment in trust did not represent a contribution under a deferred compensation plan within the meaning of Section 401–404, and even if the payment was a deferred compensation plan, the payment was not nonforfeitable within the meaning of sections 402(b) and 404(a) (5). We agree with the government that the payment in trust did not represent a contribution under a deferred compensation plan, and thus we do not reach the issue of whether the payment was nonforfeitable.

Section 404(a) provides that if compensation is paid on account of any employee under a plan deferring its receipt, such compensation shall not be deductible under Section 162 (relating to trade or business expenses) or Section 212 (relating to expenses for the production of income), but if the plan satisfies the conditions of either of those sections, it shall be deductible under Section 404(a), subject to certain stated limitations described in the numbered subsections thereunder. Taxpayer claims that its lump sum payment to the trustee was made pursuant to a Section

404(a), (5) plan. Section 404(a) (5) of the Code provides for the deduction in the taxable year when paid of a contribution made to a plan deferring the receipt of compensation, if the plan is not a pension trust, employee annuity, or stock bonus and profit-sharing trust which meets the non-discrimination and other exemption requirements of Section 401, and if the employees' rights to or derived from such employer's contribution or compensation are nonforfeitable at the time the contribution or compensation is paid.

It takes only an open-eyed reading of the record and a utilization of common sense to recognize that the 1958 contracts and the 1961 trust arrangement were not part of a plan or method of deferred compensation within the contemplation of Sections 401–404. The trust agreement, although purported to be a final settlement of Bellco's obligations to Catlow and Wolcott under the 1958 contracts, did not discharge Bellco's contractual duties to the two men. Neither of the men were parties to the trust arrangement and neither released Bellco or its assigns from the obligations created by the 1958 contracts. The payment to the trustee in no way released or discharged or affected Bellco's 1958 contract liabilities to Catlow or Wolcott. Bellco, by creating the trust, simply created a secondary or alternative obligor under the 1958 agreements. Bellco, of course, remained the primary obligor.

Since the 1961 trust arrangement was simply a means of providing a fund for Bellco's discharge of its continuing contractual obligations to Catlow and Wolcott, the lump sum payment to the trustee would be deductible under Section 404 only if the 1958 contracts constituted a deferred compensation plan within the meaning of Section 404(a) (5) of the Code.

It is clear that Bellco itself did not regard its annual payments under the 1958 contracts with Catlow and Wolcott, or its 1961 trust, as part of a deferred compensation plan. Bellco did not designate separately as deferred compensation the annual insurance premiums and cash payments made pursuant to the 1958 contracts on its income tax returns for the fiscal years 1959 through 1961, and on its final return it reputed the 1961 payment in trust as a "payment in final settlement" of the 1958 contracts. During Catlow's and Wolcott's employment, Bellco's balance sheet did not refer to its 1958 contractual obligation to Catlow and Wolcott, and it was not until after the termination of Catlow's and Wolcott's employment that Bellco referred to this obligation by attaching a footnote to its balance sheet for the fiscal year ending February 29, 1960. The footnote to the balance sheet described Bellco's obligation not as an obligation under a plan deferring the receipt of income but as one under an employment contract to pay life insurance premiums amounting to $16,549.50 annually, and the amounts were described as due annually for the next six years. The same type of footnote was attached to Bellco's balance sheet for the fiscal year ended February 28, 1961. On the basis of this and other evidence, the district court found that Bellco did not regard its 1958 contract liabilities as lump-sum liabilities, but rather as annual liabilities accruing on the June 26 payment date each year, and not subject to being accelerated. This finding was based on the evidence, was consistent with the applicable law, and thus was not clearly erroneous and must be sustained on appeal. Lengsfield v. Commissioner of Internal Revenue, 5th Cir. 1957, 241 F.2d 508.

In sum, the 1961 trust arrangement created a secondary, conditional liability essentially no different from that already created by the 1958 contracts. The 1958 agreements were employment contracts and did not constitute a deferred compensation plan within the meaning of Section 404. The payments made by Bellco on the annual insurance premiums were deductible in the taxable year in which the premiums were due and paid. The total amount of the remain-

ing premiums, however, was not deductible in 1961, the year of the trust payment, since there was not a definite, fixed and existing obligation of $91,-849.72 to Catlow and Wolcott accruable during fiscal 1961. Therefore the deduction and carryback of $91,849.72 was properly disallowed. *Cf.* Burlington-Rock Island Railroad Company v. United States, 5th Cir. 1963, 321 F.2d 817.

Affirmed.