WIEN CONSOLIDATED AIRLINES, INC., FORMERLY WIEN ALASKA AIRLINES, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7914–70.    Filed April 2, 1973.

*J. L. McCarrey, Jr.*, for the petitioner.
*Richard L. Shipley*, for the respondent.

---

IRWIN, *Judge:* Respondent determined a deficiency in income tax of $55,491 against petitioner for the fiscal year ending March 31, 1962. Other years are indirectly involved because of the carryover and carryback provisions of the Internal Revenue Code.

The issues involved herein are: (1) Whether petitioner had an existing liability for the total estimated payments under the State Workmen's Compensation statute to survivors of three pilots; and, if liability existed, (2) whether the amount of that liability was reasonably ascertainable.

All of the facts have been stipulated and are found accordingly.

Wien Consolidated Airlines, Inc. (hereafter referred to as Wien or petitioner), is a corporation organized under the laws of the State of Alaska, with its principal place of business in Anchorage, Alaska. Petitioner is the survivor of a 1968 merger between Wien Alaska Airlines, Inc., and Northern Consolidated Airlines, Inc. In 1962 Wien Alaska Airlines, Inc., filed its Federal income tax returns on an accrual method of accounting, using a fiscal year ending March 31, with the district director of internal revenue, Anchorage, Alaska.

Petitioner for many years has operated a commercial airlines in the State of Alaska and employs many personnel including pilots. It was at all material times subject to the Alaska Workmen's Compensation Act and had elected to be self-insured under that Act. Wien carried life insurance policies on its flight personnel.

During the fiscal year ending March 31, 1962, and years affecting the computation of tax liability for that year, three of Wien's pilots were killed in airplane crashes. In each instance petitioner has acknowledged its liability under the Workmen's Compensation statute and has made the required payments to the widows and children of the deceased pilots.

Under the Alaskan statute employer payments continued to each widow until her death or remarriage. Payments are made to each child until he reaches age 19, subject to termination upon death.

On its income tax return petitioner claimed a deduction for the accrual of estimated liability in excess of the insurance. In making estimates of the amounts, the company determined the life expectancy of each widow using standard actuarial tables. The figure obtained for each widow was then multiplied by the amount of the periodic payments due under the Alaskan statute. The amounts estimated to be due each child were computed by multiplying the periodic payment by the time remaining until each child reached age 19.

Two of the three widows to whom payments were due have remarried.

Respondent has disallowed the deductions claimed for the estimated liability, limiting the deduction for workmen's compensation to amounts actually paid.

Section 1.461-1(a)(2), Income Tax Regs., states:

Under an accrual method of accounting, an expense is deductible for the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy. * * *

It is respondent's position that adherence to the all-events rule precludes petitioner from accruing the estimated expenses. He argues that the contingencies of death or remarriage were conditions precedent, making the petitioner's liability conditional. Respondent cites *Trinity Construction Co.* v. *United States*, 424 F. 2d 302 (C.A. 5, 1970), in support of his position.

In that case the taxpayer agreed to purchase life insurance policies for two employees in 1958. The premiums were to be paid annually for 10 years, subject to the condition that the payments would cease at death. The Fifth Circuit held that a lump sum set aside for the remaining installments could not be accrued because there was no such liability since the obligation was to pay annual premiums due each year if the employees were alive on the due date of the premiums.

Petitioner responds that the event fixing its liability under the Workmen's Compensation statute was the death of each of the pilots. Upon the occurrence of that event, argues petitioner, it had a fixed liability by law without the occurrence of any other event.

To determine whether the all-events test has been met we must first ask whether all events necessary to fix petitioner's liability have occurred. We agree with petitioner that they have.

When each of the pilots died, petitioner's liability under the Alaska Workmen's Compensation Act came into existence.

The term "condition subsequent" defines a provision, the occurrence of which will terminate an existing liability. Condition precedent defines a provision which must occur before liability arises. The contingencies contained in the statute were of such a nature that they might terminate the existing liability. Therefore, they were conditions subsequent and not conditions precedent as respondent contends.

*Trinity* is distinguishable from the present case in that the District Court found the taxpayer "did not regard its 1958 contract liabilities as lump-sum liabilities, but rather as annual liabilities." *Trinity Construction Co.* v. *United States, supra* at 306. We infer that the contract in that case made survival a condition precedent.

In *Thriftimart, Inc.*, 59 T.C. 598 (1973), and *Crescent Wharf & Warehouse Co.*, 59 T.C. 751 (1973), the petitioners, accrual method taxpayers, were self-insurers under the California Workmen's Com-

pensation law. In both cases we held that the petitioners were not entitled to deduct reserves for estimated liability to injured employees.

Under the California Workmen's Compensation statute the petitioners did not become liable until an injured employee incurred medical expenses or was away from work in excess of 7 days. See *Thriftimart, Inc., supra.* In *Thriftimart* we stated the following: "Therefore, where petitioner admitted liability if any arose, it did not in fact have any liability for any payment of any specific amount to any employee until the conditions of that employee having medical services or being away from work occurred." The conditions in *Thriftimart* and *Crescent Wharf*, like the conditions in *Trinity Construction*, were conditions precedent.

We now turn to the question of whether the amount of petitioner's liability can be determined with reasonable accuracy.

Petitioner contends that the amount of liability to the widows was ascertainable by use of actuarial tables. It admits that it did not consider the possibility of the widows' remarriage "because no statistics were available." It asserts, however, that failure to consider that contingency should not be controlling.

Respondent counters that it was impossible in the years of the pilots' deaths to determine the amount of liability. He further states that the use of actuarial tables is not sufficiently reliable to determine the amount of liability on an individual basis.

*Texaco-Cities Service Pipe Line Co. v. United States,* 170 F. Supp. 644 (Ct. Cl. 1959), involved a vacation allowance agreement which, prior to 1945, provided that an employee would lose the right to vacation pay if he voluntarily resigned, was discharged for cause, failed to take his vacation before retirement, or died before taking his vacation. The agreement, however, had been amended in 1945 to provide that an employee was entitled to a vacation allowance unless he was discharged for dishonesty.

The Court of Claims held that the amendment had eliminated the uncertainty as to the amount of the liability. That holding is consistent with other cases which allow accrual and deduction of a liability when the amount can be determined with reasonable accuracy. See *Harrold* v. *Commissioner,* 192 F. 2d 1002 (C.A. 4, 1951); *Denise Coal Co.* v. *Commissioner,* 271 F. 2d 930 (C.A. 3, 1959). It is implicit in those opinions that "where a deduction is properly accrued on the basis of a computation made with reasonable accuracy and the exact amount is subsequently determined in a later taxable year, the difference, if any, between such amounts shall be taken into account for the later taxable year in which such determination is made." Sec. 1.461–1(a)(2), Income Tax Regs.

In *Texaco-Cities* the new condition was a condition subsequent because it might terminate the existing liability. The probability of an employee being fired for dishonesty was not great. We, therefore, construe that case to mean that if a condition subsequent is unlikely to occur, its existence will not prevent the amount of a liability from being reasonably certain.

Petitioner has not proven that the amount of its liability to the widows has been reasonably ascertained. It specifically admits that its estimates did not consider the possibility of remarriage; therefore, its own estimates were not reasonably accurate. Furthermore, the conditions that will terminate petitioner's liability are not conditions which can be characterized as unlikely to occur. As a matter of fact, two of the three widows have remarried.

Because petitioner has not proven the amount of its liability to be reasonably ascertainable, we need not reach the question as to whether statistics on remarriage would have established the amount of the liability.

The condition that payments to the children end if they die before attaining age 19 is similar to the condition in *Texaco-Cities*. In both cases the liability of taxpayer was fixed. In *Texaco-Cities* the condition was unlikely to occur. Similarly, we think, that the likelihood that the children will die before attaining age 19 is not such that the amount of petitioner's liability for payments to the children cannot be determined with reasonable accuracy.

We hold that petitioner properly took a deduction for liability to the children in the year the employees died. Payments to the widows, however, may only be deducted when actually paid.

*Decision will be entered under Rule 50.*