CAPITAL INVESTMENT OF HAWAII, INCORPORATED AND AFFILIATES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Capital Inv. of Hawaii, Inc. v. Commissioner
Docket No. 3346-79.
United States Tax Court
T.C. Memo 1982-80; 1982 Tax Ct. Memo LEXIS 665; 43 T.C.M. (CCH) 572; T.C.M. (RIA) 82080; February 17, 1982. *665 Petitioner, an accrual basis taxpayer, guaranteed a 9-1/4 percent yield to "transferees" of participating interests in notes. Held, petitioner's obligation is one to pay interest. Held further, when principal may be prepaid, the passage of time is necessary before an accrual basis taxpayer may deduct an obligation to pay interest. Clinton R. Ashford and David B. Dohms, for the petitioner. Lawrence G. Becker, for the respondent. FAY
MEMORANDUM OPINION FAY, Judge: Respondent determined deficiencies of $ 701,828 and $ 128,953 in petitioner's Federal income tax for the fiscal years ending July 31, 1973, and July 31, 1974, respectively. After concessions, the only issue remaining for decision is whether petitioner, an accrual basis taxpayer, may accrue and deduct a liability arising from the transfer *667 of participating interests in notes. All the facts have been stipulated and are found accordingly. Capital Investment of Hawaii, Incorporated (hereinafter Capital), is a Hawaii corporation. Its principal place of business was in Hawaii when the petition in this case was filed. Makaha Valley, Inc. (hereinafter Makaha), is a Hawaii corporation and a subsidiary of Capital. [1] Both Capital and Makaha are accrual basis taxpayers operating on a fiscal year ending (FYE) July 31, 1974. During the fiscal years ending July 31, 1973, and July 31, 1974, Makaha completed and sold numerous residential condominium units located in Makaha Towers near Makaha, Hawaii. Of those condominium units sold, 220 are involved herein. Makaha sold those *668 units in 220 separate transactions for a total price of $ 7,357,700--$ 1,016,385.05 in cash and $ 6,341,314.95 in notes secured by purchase money mortgages. [2] The notes, while substantially identical in form, varied in certain terms such as face amount and rate of interest. The Brentwood Transaction
On December 28, 1973, Makaha and Brentwood Savings and Loan Association (hereinafter Brentwood), a California corporation, entered into a Commitment Agreement. That agreement provided Brentwood would "purchase," at face value, senior participating interests in certain of the first mortgage loans on the condominium units in a total amount not to exceed $ 2,000,000. Makaha was required to notify Brentwood by April 1, 1974, as to what loans Makaha would require Brentwood "to purchase." Makaha fulfilled that requirement by letter dated March 25, 1974, in which it listed the mortgage loans which would be subject to the Commitment Agreement. *669 The salient features of those loans may be summarized as follows: Number of
Total Face
Interest Rate
Down Payment
Notes
Amount
8-3/4%
10%
45
$ 1,227,577.03
8-1/4%
10%
2
62,362.63
8-1/4%
25%
11
256,458.08
8%
25%
1
22,921.47
7-3/4%
25%
3
74,709.09
62
$ 1,644,028.30
As a condition precedent to the effectiveness of the Commitment Agreement, Makaha agreed to "purchase" from Brentwood a 12 percent junior participating interest in each transferred loan. Thus, Brentwood would end up with an 88 percent senior participating interest. Even though the subject notes bore interest from 7-3/4 percent to 8-3/4 percent, Makaha guaranteed Brentwood an absolute yield of 9-1/4 percent on Brentwood's participating interests. [3] Additionally, as part of the Commitment Agreement, Makaha agreed to pay Brentwood a nonrefundable "commitment fee" of $ 20,000, and a "funding fee" equal to 1 percent of the "purchase price" of the loans "purchased." During Makaha's FYE July 31, 1974, the *670 Commitment Agreement was carried out as follows: Brentwood paid Makaha $ 1,446,744.90 (88 percent of the total face amount of the loans involved); Brentwood paid Makaha $ 3,345.64 representing interest accrued on the 88 percent interests since the last payments; and Makaha paid Brentwood $ 14,467.45 as the 1 percent "funding fee." [4]
The loans made subject to the Commitment Agreement were also subject to "Repurchase Agreements" executed by Makaha, Brentwood, and Capital on September 26, 1972, and July 5, 1973. Basically, those "Repurchase Agreements" obligate Makaha or Capital to "repurchase" from Brentwood any loan which is delinquent for ninety days or more if, after written notice from Brentwood, they are unable to cure the delinquency *671 within 10 days. [5]
The Guardian Transaction
On December 12, 1973, Makaha and Guardian Life Insurance Company of America (hereinafter Guardian), a New York corporation, executed a "Share Ownership Agreement." That agreement provided Guardian would "purchase" 80 percent senior participating interests in certain of the first mortgage loans on the condominium units, with Makaha "retaining" 20 percent junior participating interests. The salient features of the loans subject to the Share Ownership Agreement may be summarized as follows: Number of
Interest Rate
Down Payment
Notes
Total Amount
8-3/4%
10%
6
$ 182,373.09
8-1/4%
10%
124
3,816,131.70
7-3/4%
25%
28
698,781.86
158
$ 4,697,286.65
Even though the subject notes bore from 7-3/4 percent to 8-3/4 percent interest, Makaha guaranteed Guardian an absolute yield of 9-1/4 percent. Makaha *672 agreed to pay a servicing fee of 1/4 of 1 percent to the Bank of Hawaii as well as any mortgage insurance premiums. Compare n. 3, supra.
During Makaha's FYE July 31, 1974, the Share Ownership Agreement was carried out as follows: Guardian paid Makaha $ 3,757,829.32 (80 percent of the total face amount of the loans involved), and Guardian paid Makaha $ 12,522.19 representing interest accrued on the 80 percent interests since the last payments. [6]
Simultaneous with the Share Ownership Agreement, Guardian, Makaha, and Capital executed a "Repurchase Agreement" identical in essence to the "Repurchase Agreements" executed by Brentwood, Makaha, and Capital. General Facts
As noted above, Makaha guaranteed both Brentwood and Guardian a 9-1/4 percent yield on their senior participating interests. During its FYE July 31, 1974, Makaha actually paid Brentwood and Guardian a total *673 of $ 10,211.87 to effectuate that provision. [7] The parties agree that Makaha's obligation to pay 9-1/4 percent with respect to a particular note is extinguished when that note is discharged, either by prepayment or foreclosure. As of June 30, 1980, 22 of the mortage notes had been paid in full and 6 had been "repurchased" by Makaha. On its consolidated Federal income tax return for the FYE July 31, 1974, petitioner deducted $ 380,111.87 as representing the difference between the face value and the fair market value of purchase money notes received by Makaha. In his statutory notice of deficiency respondent determined that Makaha, as an accrual basis taxpayer, must include the purchase money notes at face, rather than fair market value. In its petition, petitioner maintained, in the alternative, that the present value of the amount Makaha would have to pay Brentwood and Guardian to effectuate a 9-1/4 percent yield over the term of the notes, was deductible as an ordinary loss in the FYE July 31, 1974. By amendment to its petition, petitioner asserted that it was entitled to accrue and *674 deduct in the FYE July 31, 1974, a liability equal to its obligation to effectuate a 9-1/4 percent yield. On brief, petitioner conceded that an amount equal to the face amount of the notes must be included in income for the FYE July 31, 1974, and the difference between face value and fair market value does not represent an ordinary loss deductible in that year. Thus, the only issue for decision is whether petitioner may accrue and deduct in the FYE July 31, 1974, a liability representing Makaha's obligation to pay Brentwood and Guardian a 9-1/4 percent yield. Respondent maintains Makaha's obligation to pay Brentwood and Guardian amounts necessary to effect a 9-1/4 percent yield on the transferred participating interests in the mortgage notes is an obligation to pay interest which must be accrued over time. Petitioner contends Makaha sold the participating interests in the mortgage notes and incurred a fixed liability, the amount of which is determinable with reasonable accuracy. Thus, petitioner contends the entire liability is accruable and deductible in Makaha's FYE July 31, 1974, under section 461(a) and section 1.461-1(a)(2), Income Tax Regs.
*675 We agree with respondent that Makaha's obligation is an obligation to pay interest. While Makaha's agreements with Brentwood and Guardian are phrased in terms of sales and repurchases, they, in effect, amount to a loan for which the transferred participating interests serve as security. When third party notes payable over time are actually sold, they are usually sold at a discount. In this case, Makaha received the full face value of the subject participating interests, and promised to compensate Brentwood and Guardian by paying 9-1/4 percent on that face value received over the terms of participating interests. As structured the principal (face value) would be paid back as the mortgage notes were paid by their makers, and the 9-1/4 percent interest would be paid partially through the 7-3/4 percent to 8-3/4 percent interest paid by the makers of the notes and partially through Makaha's obligation to pay directly the remainder. Makaha and Capital, through the Repurchase Agreements, bore the risk of any nonpayment by the makers of the notes. The notes served as both security for the loans and the means to effect repayment of the loans and partial payment of the interest on *676 the loas. Concluding that Makaha's obligation is one to pay interest does not end our inquiry into the proper year or years for accrual and deduction. Interest is deductible when "paid or accrued." Sec. 163(a). Thus, for an accrual basis taxpayer, it is the year of accrual for tax purposes which determines the proper taxable year for the deduction of interest. Secs. 461(a) and 7701(a)(25). An accrual basis taxpayer may deduct an expense when (1) all events have occurred which determine the fact of the liability and (2) the amount of the liability can be determined with reasonable accuracy. Sec. 1.461-1(a)(2), Income Tax Regs. We are unable to find that all events determining Makaha's liability occurred during the FYE July 31, 1974. Thus, deduction of the entire obligation in that year is not proper. Makaha's obligation to pay Brentwood and Guardian a 9-1/4 percent yield is extinguished with respect to an individual note if that note is discharged by either prepayment or foreclosure. That fact serves as the basis for the parties' arguments concerning the *677 all events test. [8] Respondent maintains interest accrues as time passes. Petitioner, relying on Wien Consol. Airlines, Inc. v. Commissioner,528 F.2d 735 (9th Cir. 1976), affg. 60 T.C. 13 (1973), and Crescent Wharf and Warehouse Company v. Commissioner,518 F.2d 772 (9th Cir. 1975), revg. 59 T.C. 751 (1973), contends any prepayment which might extinguish Makaha's obligation is a condition subsequent which does not prevent accrual for tax purposes. We find for respondent. The purpose of the "all events" test is to protect against deductions for expenditures that might never occur. Thus, as a general rule, the existence of a contingency with respect to a liability prevents accrual for tax purposes. World Airways, Inc. v. Commissioner,62 T.C. 786 (1974), affd. 564 F.2d 886 (9th Cir. 1977). However, a difference exists between those factors which are necessary before *678 a liability is fixed and those factors which serve to relieve or diminish an already fixed liability. World Airways, Inc. v. Commissioner,supra.Thus arises the necessity to distinguish between the two. This Court has long held that interest accrues over time. Gunderson Bros. Engineering Corp. v. Commissioner,42 T.C. 419, 429 (1964); The James Brothers Coal Co. v. Commissioner,41 T.C. 917, 922 (1964); Higginbotham-Bailey-Logan Co. v. Commissioner,8 B.T.A. 566, 577 (1927); Cumberland Glass Manufacturing Co. v. Commissioner,2 B.T.A. 1122, 1127 (1925). The reasoning behind that rule is that the final event which makes the obligor liable is not the contract or agreement to pay interest, but rather it is the passage of time without prepayment of principal. Luhring Motor Co. v. Commissioner,42 T.C. 732, 743 (1964); Gunderson Bros. Engineering Corp. v. Commissioner,supra.[9] Interest is "compensation for the use or forebearance of money." Deputy v. du Pont,308 U.S. 488, 498 (1940). Inherent in interest is the passage of time for *679 use or forebearance. When that time may be reduced by prepayment of principal, some or all of an obligation to pay interest simply may never arise. Thus, the passage of time without prepayment clearly is necessary for the accrual of interest for tax purposes. See Luhring Motor Co. v. Commissioner,supra at 742. See also Etheridge & Vanneman, Inc. v. Commissioner,40 T.C. 461, 468-469 (1963). Petitioner's reliance on Wien Consol. Airlines, Inc. v. Commissioner,supra, and Crescent Wharf and Warehouse Company v. Commissioner,supra, to establish a contrary rule *680 with respect to interest is misplaced. In Wien, an employer-taxpayer became obligated under a state workmen's compensation act to pay benefits to surviving dependents of certain deceased employees. However, the obligation ceased if a surviving widow remarried or a surviving child died before reaching nineteen years of age. In affirming this Court's characterization of those possible events as conditions subsequent which did not prevent accrual under the all events test, the Ninth Circuit Court of Appeals analogized to a vested estate in property which a condition subsequent could terminate. See 528 F.2d 737, n. 4 (9th Cir. 1976). Although such an analysis was not articulated in Crescent, it applies as well. In Crescent, an employer-taxpayer wanted to accrue liabilities under a state workmen's compensation statute for uncontested claims when an employee was injured. This Court found that statutory requirements of absence from work and medical reports were conditions precedent to any fixed liability. The Ninth Circuit Court of Appeals disagreed, finding liability was certain since the claims were uncontested. Inherent in the appellate court's findings *681 is that an injured employee had a right to payment. Unlike the cases of Wien and Crescent, no vested right analysis is applicable to an interest obligation which may be diminished or erased by prepayment. In the case before us, Brentwood and Guardian were entitled to nothing until time passed without prepayment. [10]
To reflect concessions and the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Makaha was affiliated with Capital for the purpose of filing consolidated Federal income tax returns during part of the FYE July 31, 1973, and during the entire FYE July 31, 1974. Capital filed consolidated Federal income tax returns for both the taxable years involved herein. Thus, Capital, as petitioner herein, is acting as the sole agent for each of its subsidiaries. See Sec. 1.1502-77(a), Income Tax Regs.↩
2. Makaha did not elect to return the income from the sales of the condominium units under sec. 453. Unless otherwise provided, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
3. Such yield to be calculated after payment by Brentwood of a servicing fee of 1/4 of 1 percent to the Bank of Hawaii and mortgage insurance premiums where applicable.↩
4. Thus, Makaha received a total of $ 1,450,090.54 from Brentwood. As noted above, $ 14,467.45 was paid to Brentwood. Such payment was recorded on Makaha's books as "interest paid (loan finance fees 1% funding fee)." The remainder received by Makaha, $ 1,435,623.09, was paid to the Bank of Hawaii in partial satisfaction of a construction loan exceeding $ 10,000,000, the proceeds of which Makaha had used to construct the condominium units.↩
5. Delinquency is defined as failure actually to receive payment for any reason. Furthermore, a mortgagor's institution of any action against Brentwood concerning the origination of a loan is treated a delinquency. In such a case, Makaha and Capital must defend and hold harmless Brentwood.↩
6. Thus, Makaha received a total of $ 3,770,381.51 from Guardian. Of that amount, $ 3,712,950.30 (principal) and $ 12,737.49 (interest) was paid by Makaha to the Bank of Hawaii in connection with Makaha's construction liability. See n. 4, supra.↩ The remaining $ 44,693.72 was kept by Makaha.
7. The $ 10,211.87 was recorded on Makaha's books as a debit to its interest account.↩
8. We express no opinion as to what the result would be if the underlying obligation contained no prepayment feature.↩
9. Although Luhring Motor Co. v. Commissioner,42 T.C. 732 (1964), and Gunderson Bros. Engineering Corp. v. Commissioner,42 T.C. 419 (1964), involved an analysis of the all events test for purposes of an accrual basis taxpayer's timing of income under sec. 451, the reasoning of those cases is applicable to an analysis of the same test for purposes of an accrual basis taxpayer's timing of deductions under sec. 461. See Commissioner v. Milwaukee & Surburban Transport Corp.,367 U.S. 906↩ (1961).
10. Having found that all events fixing Makaha's obligation to pay interest did not occur in the FYE July 31, 1974, we need not address whether the amount of Makaha's obligation could be determined with reasonable accuracy in that year. However, we note that a calculation which does not consider all relevant factors will not suffice for determination with reasonable accuracy. Wien Consol. Airlines, Inc. v. Commissioner,60 T.C. 13 (1973), affd. 528 F.2d 735↩ (9th Cir. 1976), and petitioner's calculations presented herein made no provision with respect to prepayments.