WILLIAM F. SNYDER AND COLLEEN F. SNYDER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Snyder v. Commissioner
Docket No. 26335-84.
United States Tax Court
T.C. Memo 1988-320; 1988 Tax Ct. Memo LEXIS 348; 55 T.C.M. (CCH) 1334; T.C.M. (RIA) 88320; July 26, 1988
Richard A. Lesco, for the *350 petitioners and William F. Snyder, pro se. Carol A. Szczepanik, for the respondent. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined the following deficiencies in petitioners' joint Federal income tax for 1976 and 1977 taxable years in the amounts of $ 20,194.92 and $ 91,253.52, respectively. The deficiencies stem from adjustments to the income and deductions of a general partnership in which petitioner William F. Snyder [1] ("petitioner") was a general partner. After concessions, the issues to be determined are (1) whether certification to begin taking a fixed amount of state tax reductions over a specified period of time constituted income to the partnership that was properly accruable in the taxable year of certification; and (2) whether the partnership properly deducted expenses for meals provided to its employees on its business premises. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners' *351 residence was Rocky River, Ohio, at the time of filing the petition. Petitioners filed their Federal income tax returns for the years at issue with the Internal Revenue Service Center in Cincinnati, Ohio. Northfield Park Associates (NPA) is a general partnership which operated a harness racing horse track in Ohio during 1976 and 1977. Petitioner was a partner of NPA, owning 7.37 percent of capital and sharing in the profits and losses of NPA in this percentage. NPA uses an accrual method of accounting and the calendar year as its taxable year. State Tax Reduction
Under Ohio state law, holders of permits to conduct horseracing meets with pari-mutuel wagering systems may retain 17.5 percent of total wagers as a commission. [2]Ohio Rev. Code Ann. sec. 3769.08 (1980). Out of this commission, the permit holder must remit to the state a percentage of all wagers at the close of each racing day. The percentage remitted is a tax and is based upon a graduated scale. Ohio Rev. Code Ann. sec. *352 3769.08 (1980) provides for a tax reduction "to encourage the improvement of racing facilities for the benefit of the public, breeders, and horse owners, and to increase the revenue to the state from the increase in pari-mutuel wagering resulting from such improvements * * *." Under this section, permit holders making certified capital improvements to their racing facilities reduce their tax payments by one-half of one percent of the total amount wagered. This tax reduction may not begin until the construction costs of the capital improvement have been certified by the state racing commission. Such certification does not take place until the actual construction has been completed. Once certified, the tax reduction continues for a period of six years, or until the total tax reduction reaches seventy percent of the cost of the capital improvement, whichever occurs first. The six-year period runs consecutively, rather than concurrently, when more than one application for certification of capital improvement costs is approved. NPA made several capital improvements to its racing facilities *353 in 1976 and 1977, and submitted applications for certification of these costs in accordance with Ohio Rev. Code Ann. sec. 3769.08 (1980). The application designated 1976-1A-NFLD was approved by the Ohio Racing Commission on April 8, 1976, entitling NPA to a tax reduction of $ 409,559.29. A second application designated 1976-2A-NFLD was approved by the Ohio Racing Commission on June 15, 1977, entitling NPA to an additional tax reduction to $ 125,153.09. The effect of each of these certified applications was to permit NPA to reduce the nightly tax payment by one-half of one percent of total wagers for six years, or until the certified amount has been reached in tax reductions, if earlier. The six-year periods were to run consecutively. Of the $ 409,559.29 of approved tax reductions from application 1976-1A-NFLD, NPA was able to utilize $ 252,826.22 in taxable year 1976. The remaining $ 156,733.07 from application 1976-1A-NFLD, along with the full amount of $ 125,153.09 from application 1976-2A-NFLD, was utilized in tax reductions in taxable year 1977. The partnership tax returns of NPA for 1976 and 1977 reflected deductions for pari-mutuel tax expenses consisting of the full *354 amount of the tax imposed by Ohio Rev. Code Ann. sec. 3769.08 (1980). The tax reductions allowed to NPA as a result of the certified capital improvements were treated as adjustments to its bases in its capital assets. Respondents determined that the tax reductions should have instead been included in the partnership's income. Petitioner concedes that NPA's income should be adjusted to reflect the tax reductions under Ohio Rev. Code Ann. sec. 3769.08 (1980) since the tax reduction represents an abatement of taxes that would otherwise be payable. Accordingly, petitioner's distributive share of the partnership's losses must be adjusted. However, petitioner argues that the adjustment to NPA's income should not be for the full amount of the certified tax reductions approved in each year. Rather, petitioner argues that only the portion of the approved tax reductions realized in each year through the nightly submission of a reduced percentage of the total wagers should be reflected as income in each tax year. Employee Meal Expenses
A second issue to be decided by the Court concerns the disallowance of employee meal expenses of NPA that had been claimed as travel and entertainment *355 expenses under section 274. [3]
NPA entered into a contract with Sports Service, a concessionaire, to operate the bars and restaurants at the race track during the years at issue. As part of the agreement, Sports Service was to remit a percentage of sales of food and alcohol to NPA. Management and administrative personnel of NPA were required to be at the track and on duty from 5:00 p.m. to 11:00 p.m. or until closing. As a result, the evening meals of these employees were eaten at the race track in the facilities operated by Sports Service while they were on duty. When ordering a meal, the employee would sign the dinner check. Then, when Sports Service was due to remit the percentage of sales to NPA, the total dollars attributable to NPA employee meals would be subtracted from the amount remitted. For taxable year 1976, NPA claimed $ 50,552.00 in travel and entertainment expenses, a portion of which represented the amounts attributable to employee meals. Respondent *356 allowed $ 23,495.00 and petitioner has conceded the remainder. Therefore, these expenses are not at issue for taxable year 1976. For taxable year 1977, NPA claimed $ 51,289.00 in travel and entertainment expenses. Respondent disallowed the entire amount for lack of substantiation. Petitioner conceded $ 20,177.42, but argues that the remaining $ 31,111.58 in expenses were improperly classified as travel and entertainment. Petitioner maintains that these were essential expenses for employee meals and were properly deductible as such. OPINION The determinations of respondent in the statutory notice of deficiency are presumptively correct and petitioner bears the burden of proving otherwise. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). State Tax Reduction
Taxable income for a particular accounting period is generally determined using the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books. Sec. 446(a). *357 Since the only items in dispute in this case relate to petitioner's distributive share of NPA's partnership losses, we look to NPA's method of accounting. NPA maintains its books and records using the accrual method of accounting. Under an accrual method of accounting, income is to be included for the taxable year when all the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy. Sec. 1.446-1(c)(1)(ii) and Sec. 1.451-1(a), Income Tax Regs.; Spring City Foundry Co. v. Commissioner,292 U.S. 182, 184-185 (1934). Respondent determined that the "all events" test was satisfied when NPA received certification of the capital improvements costs by the state racing commission. Accordingly, the full amount of the certified tax reduction was income in the year that certification was received. In support of that determination, respondent states that the certification of the capital improvement costs fixed the right of NPA to reduce the nightly tax payment by one-half of one percent of the total wagers. Additionally, the amount of income was determinable with reasonable *358 accuracy since the notice of certification stated the maximum accuracy since the notice of certification stated the maximum tax reduction available. Petitioner argues that the all events test was not satisfied upon receipt of certification of the capital improvement costs because the ability of NPA to realize the tax reduction was contingent upon the racetrack's receiving sufficient wagers within the six-year period. We agree with respondent. We find that the right to receive the tax reductions was fixed and the amounts determinable with reasonable accuracy in the year of certification. As stated, for an entity using the accrual method of accounting, the standard as to includability of an income item is the right to receive and not the actual receipt of the income. Spring City Foundry Co. v. Commissioner, supra.Ohio Rev. Code Ann. sec. 3769.08 (1980) states that the right to take a tax reduction for capital improvements arises upon the approval by the state racing commission of the amount expended. Thus it is this approval which fixes the right to this income. Given a fixed or unconditioned right to receive income, accrual is proper so long as there is *359 a "reasonable expectancy" that the income will ultimately be received in the form of cash or its equivalent. H. Liebes & Co. v. Commissioner,90 F.2d 932, 937 (9th Cir. 1937), affg. 34 B.T.A. 677 (1936). In this light, it was proper to accrue the tax reduction as income when the certification was received if NPA could have reasonably expected to avail itself of the tax reduction in the normal course of its operation of a racetrack with a pari-mutuel wagering system. See also Helvering v. Russian Finance & Construction Company,77 F.2d 324, 327 (2d Cir. 1935) (normal course of events). Petitioner argues that the racetrack could have subsequently ceased to operate, or that the receipt of wagers could have ceased, and therefore NPA should not be required to accrue the tax reduction as income in the year of certification. This position has been rejected by the Supreme Court in United States v. Hughes Properties, Inc.,476 U.S. 593 (1986). That case concerned the deductibility of accrued liabilities. The taxpayer, a casino operator, accrued progressive slot machine jackpots which remained unpaid at year end. *360 The Court allowed the deductions, holding that at the end of its taxable year, the taxpayer's liability for the accrued amounts was definite and fixed pursuant to Nevada law. The Court held that the remote possibility that the casino would cease operations -- or the even more remote possibility that people would cease to gamble -- went to whether the liability would eventually be paid, not whether it had been incurred. Similarly, the closing of the racetrack or elimination of the pari-mutuel wagering system would affect whether the tax reduction would eventually be received, not whether the right to receive this income was fixed. [4]
*361 The fact that the tax reduction would have expired if not used up within six years did not constitute a contingency sufficient to prevent accruing the tax reduction as income in the year that it was certified. Rather, this merely operated as a condition subsequent which could have cut off the fixed right to receive income in the future. We held in Burnham Corp. v. Commissioner,90 T.C. 953 (1988), that the existence of a condition subsequent which may cut off liability in the future does not prevent that liability from being fixed for accrual purposes. Likewise, the Supreme Court stated in United States v. Hughes Properties, Inc., supra, that a potential of nonpayment exists for every business that uses an accrual method, yet it does not prevent accrual. The possibility that the tax reduction might expire unused also does not prevent us from holding that the amount of income could be determined with reasonable accuracy in the year of certification. The letters of certification from the Ohio racing commission clearly stated the amount of tax reduction *362 approved. This amount would be received by NPA unless the condition subsequent occurred; i.e., the reduction expired unused. In Wien Consolidated Airlines, Inc. v. Commissioner,60 T.C. 13, 17 (1973), affd. 528 F.2d 735 (9th Cir. 1976), we stated that "if a condition subsequent is unlikely to occur, its existence will not prevent the amount of a liability from being reasonably certain." Since it was likely that the racetrack would maintain sufficient wagers over two consecutive six-year periods in which to take advantage of the approved tax reductions, this condition subsequent was unlikely to occur. Indeed, if the six-year limitation period were to truncate the amount of tax reduction a actually utilized, an adjustment to NPA's accrued income would be made at that time. That is, "where a deduction [or income] is properly accrued on the basis of a computation made with reasonable accuracy and the exact amount is subsequently determined in a later taxable year, the difference, if any, between such amounts shall be taken into account for the later taxable *363 year in which such determination is made." Wien Consolidated Airlines, Inc. v. Commissioner, supra at 16; Sec. 1.461-1(a)(2), Income Tax Regs.
For the reasons here stated, we hold that the all events test was satisfied at the time of the certification of the capital improvement costs by the state racing commission. Accordingly, the full amount of the tax reduction was income in the taxable year in which the certification was granted. Thus, NPA accrued $ 409,559.29 income in taxable year 1976 and $ 125,153.09 in taxable year 1977 from the abatement of state taxes. [5] Petitioner, as a partner, must likewise reflect this adjustment on his 1976 and 1977 personal tax returns in proportion to his distributive share of 7.37 percent in accordance with section 704. *364 Employee Meal Expenses
NPA claimed a deduction for $ 51,289.00 in employee meal expenses which it classified as "travel and entertainment" for taxable year 1977. Respondent disallowed this entire amount for lack of substantiation under section 274, and now on brief also argues that the expenses were not ordinary and necessary as required by section 162. [6] Petitioner concedes $ 20,177.42, but argues that $ 31,111.58 was improperly classified as travel and entertainment expenses under section 274. Petitioner states that these expenses were for employee meals and were deductible under section 119, and thus the strict substantiation requirements of section 274 need not be met. *365 Petitioner's reliance on section 119 is misplaced. Whether these meals fall within section 119 as meals for the convenience of the employer is not at issue here. That is, section 119 deals with the excludability of the value of the meals from an employee's gross income, not with the deductibility of the expenses incurred by the employer. We must look to other provisions to determine the deductibility of these expenses. Section 262 disallows, "except as otherwise expressly provided," the deduction of "personal, family, or living expenses." Daily meals are inherently personal expenses. See, e.g., Moss v. Commissioner,80 T.C. 1073, 1078 (1983), affd. 758 F.2d 211 (7th Cir. 1985). However, meals may be deductible under section 162(a) when they are ordinarily and necessary business expenses. Moss v. Commissioner, supra. Whether an expense is ordinary and necessary is a question of fact. Commissioner v. Heininger,320 U.S. 467, 475 (1943); Walliser v. Commissioner,72 T.C. 433, 437 (1979). As used *366 in section 162(a), an "ordinary" expense is one which is "normal, usual, or customary" in the taxpayer's trade or business. Deputy v. du Pont,308 U.S. 488, 494-495 (1940). The word "necessary" as used in section 162(a) imposes only the minimal requirement that an expense be appropriate and helpful to the taxpayer's trade or business. Commissioner v. Heininger, supra at 471; Welch v. Helvering, supra at 113. The expenses for which NPA claimed a deduction were for meals eaten on the business premises by management and administrative employees while these employees were required to be on duty. After reviewing the record, we conclude that these expenses were ordinary and necessary. It is customary to have management personnel of a racetrack duty throughout the evening racing hours. By paying for the evening meals of theses employees, NPA made a "necessary" expenditure. That is, making meals readily available on the business premises to essential personnel was appropriate and helpful to NPA's business. [7]
*367 Respondent contends that even if the meal expenses are properly deductible under section 162, the strict substantiation requirements of section 274 must also be met. Section 274 operates to disallow deduction of certain expenditures for entertainment, gifts and travel if not properly substantiated, even though the expense is permissible under another provision of the Code. Sec. 1.274-1, Income Tax Regs.; Andress v. Commissioner,51 T.C. 863, 866 (1969), affd. per curiam 423 F.2d 679 (5th Cir. 1970). Section 274 is inapplicable to the expenses at issue. First, section 274(e)(1)[8] specifically states that "expenses for food and beverages (and facilities used in connection therewith) furnished on the business premises of the taxpayer primarily for his employees" do not fall within the strict substantiation requirements of section 274. Second, *368 section 274 does not apply to the employee meal expenses at issue because these expenses do not constitute entertainment expenses. For purposes of section 274, "The term 'entertainment' does not include activities which, although satisfying personal, living or family needs of an individual, are clearly not regarded as constituting entertainment, such as (a) supper money provided by an employer to his employee working overtime * * *." Sec. 1.274-2(b)(1), Income Tax Regs.NPA's payment for meals of its employees eaten in racetrack facilities, where those employees were required to remain on duty throughout the meal, is analogous to an employer's providing meal money to an employee required to work overtime. The employee meal expense of NPA does not constitute entertainment and does not fall within the requirements of section 274. Petitioner has submitted sufficient documentation to substantiate $ 31,111.58 of employee meal expenses in 1977 as ordinary and necessary business expenses of NPA under section 162(a). Petitioner is entitled to his 7.37 percent distributive share of this deduction in accordance with section 704. To reflect the foregoing, *369 Decision will be entered under Rule 155.
Footnotes
1. Colleen F. Snyder is a petitioner only by virtue of having signed the joint return. ↩
2. The remaining 82.5 percent of the wagers is to be paid out to winning ticket holders. ↩
3. Except as otherwise noted, all section references are to the Internal Revenue Code of 1954 as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
4. Petitioner seems to infer under the "matching" principle that the tax credit should be accrued as income only in the years in which the race track generated adequate income upon which the credit was to be offset. The matching principle is generally applied to the matching of income and deductions to clearly reflect income. However, we note that this principle does not overcome the requirements of the all events test. Challenge Publications, Inc. v. Commissioner,841 F.2d 1128↩ (9th Cir. 1988), affg. a Memorandum Opinion of this Court. 5. Respondent alleges that a third application for certification of capital improvement costs was approved in 1977 in the amount of $ 155,058.00 and that this amount must also be accrued as income in 1977. Respondent bases his finding solely on a journal entry in NPA's general ledger. This journal entry is not made in a manner consistent with the entries of the prior two approved capital improvement cost applications. That is, the journal entry indicates "construction in process" but there is no notation as to approval or disapproval by the state racing commission as of the close of taxable year 1977. Such notation had been made near the journal entry representing the $ 125,153.09 figure of application 1976-2A-NFLD. No letter of certification from the state racing commission was introduced into evidence representing this alleged $ 155,058.00 approval, and petitioner has consistently denied the existence of any such approval. Additionally, in respondent's notice of deficiency, there is a notation that the $ 155,058.00 is attributable to capital improvements of a club house upon which depreciation does not begin until 1978. This leads us to believe that the club house was not completed and put into service until 1978. Since the certification of capital improvement expenditures does not occur until the construction has been completed, this fact would be in conflict with a 1977 approval date. Based on the evidence, we do not find that a third application for certification was approved in 1977. ↩
6. Respondent failed to raise the issue of whether the employee meal expenses were ordinary and necessary in either the notice of deficiency or his pleadings. While ordinarily we do not consider issues raised for the first time on brief, Seligman v. Commissioner,84 T.C. 191, 195 (1985), affd. 796 F.2d 116 (5th Cir. 1986), we find that petitioner was not prejudiced or taken by surprise by this contention. Moreover, petitioner has not raised an objection on this ground. Petitioner referred in his briefs to these expenses as "normal expenses of doing business," and there are sufficient facts in the record to make a finding on this issue. Thus, respondent's additional argument will be considered in this case. See Nat Harrison Associates, Inc. v. Commissioner,42 T.C. 601, 617↩ (1964). 7. See, e.g., Erhard Seminars Training Corp. v. Commissioner,T.C. Memo. 1986-526 (deduction of food and beverage expenses of employees); cf. Wells v. Commissioner,T.C. Memo. 1977-419, affd. without published opinion 626 F.2d 868↩ (9th Cir. 1980). 8. Sec. 274(e)(1) was formerly designated as sec. 274(e)(2) during the years at issue. It was redesignated by sec. 142(a)(2)(A)↩ of Pub. L. 99-514, 100 Stat. 2118, October 22, 1986.