VIRGINIA STAGE LINES, INC., PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 24581.   Promulgated March 2, 1951.

*Philip S. Jessup, Esq.*, and *Ernest M. Callomon, Esq.*, for the
petitioner.

*E. M. Woolf, Esq.*, for the respondent.

DISNEY, *Judge:* Our only problem is as to which is the proper year for the accrual of the amount paid under the judgment, whether 1945, when the case was appealed and argued in the Supreme Court of Appeals of Virginia and the counsel for defendant, petitioner here, considered the case to be lost, or 1946 when the judgment was rendered by that Court and paid.

· Though agreeing with *North American Coal Corporation*, 28 B. T. A. 807, that

\* \* \* The prevailing rule appears to be that unless the circumstances are exceptional, the deduction may be taken only in the year in which the liability becomes fixed by a final judgment. \* \* \*

the petitioner contends that here the circumstances are very exceptional and that sound accounting principles require the expense to be accrued. *United States* v. *Anderson*, 269 U. S. 422, and *Baltimore Transfer Co.*, 8 T. C. 1, are cited as calling for a test of sound accounting principles in the economic and bookkeeping sense. The reason advanced for the view that the circumstances are thus exceptional is in essence that the judgment had been in favor of a child against a transportation company, that upon argument before the Supreme Court of Appeals of Virginia a new theory, of implied invitee, was suggested which convinced the attorney for the defendant, the petitioner in this case, that the case was lost, that the Court, within the year 1945, in conference were unanimously of the opinion that the judgment should be affirmed, assigned it to Justice Eggleston, who had suggested the new theory upon argument, for writing the opinion, and that he wrote the opinion during December 1945, and submitted it for approval. It was in 1946 approved as written and the judgment affirmed.

Are these circumstances so exceptional as to place accruability in advance of the year when judgment was rendered by the Supreme Court of Appeals and paid? The petitioner argues that time of accrual is largely a question of fact, citing *San Francisco Stevedoring Co.*, 8 T. C. 222, and *Lucas* v. *American Code Co.*, 280 U. S. 445, holding that: "The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal, test." By any "practical test," petitioner urges, the amount of liability for the judgment was fixed on November 20, 1945.

We agree with the petitioner that the test to be applied is a "practical test"; but, applying all of the facts presented as contended for and as of course required, we are of the view that a conclusion that liability was fixed at the time of argument before the Supreme Court of Appeals would not be a practical one. Several reasons contribute to this conclusion. The petitioner on brief states the crux of the appeal was that the child was a trespasser, that petitioner was not

obligated to look out for trespassers or owe them ordinary care, but only the duty not wilfully or wantonly to injure them, and that by raising this point petitioner hoped to have the case remanded on the theory that the trial court had misdirected the jury, to be granted a new trial, and to have the amount of damages redetermined. The judgment determining these questions against petitioner was not rendered until 1946.. It appears to us that it would be altogether an impractical test to say that they were determined in 1945 because one Justice or two Justices, at the argument before the appellate court, mentioned or asked questions about a theory tending against the defendant. (Petitioner, on brief, says that four other Justices, in the opinion of defendant's counsel, a witness here for the petitioner, indicated concurrence with the point raised by Justice Eggleston. The evidence does not justify a finding that there was such concurrence. It is only that Justice Hudgins during the argument asked counsel several questions along the same line as the point raised by Justice Eggleston, but asked whether others indicated concurrence in that view by Justice Eggleston, the witness answered: "I couldn't say, your Honor. Now, I am of the opinion that they did, because of my reactions, as shown by my file.") Merely because a judge, hearing argument, suggests a point he considers pertinent to the argument, and because an attorney is so discouraged thereby that he thinks his case lost, is in our view an impractical yardstick by which to measure accruability of the amount involved before the court. The final conclusion of the court. upon further study of the point raised, might be completely different. To hold otherwise would be to accuse the court of "snap judgment" contrary to the sound inference that the court considered carefully and fully the problem, before finally rendering its opinion. The mechanics of argument, conference, assignment to a judge to write opinion for approval or disapproval by the whole court, presentation thereof for approval, final approval and rendition of judgment, all militate against the soundness of the petitioner's view. Such procedure is directed toward sound well-considered opinions. Obviously the final result could be contrary to suggestions at argument. The court until final rendition has control of the matter.

Moreover, the opinion of the Court as finally rendered, which is in full in evidence, reveals that, though the theory of implied invitee, broached by Justice Eggleston, is first set forth, it is followed by the equally potent conclusion that, because of the knowledge of its bus driver that the public generally used the paved area (where the child was injured) as a sidewalk, petitioner owed the child-plaintiff the duty of ordinary care, even if a bare licensee. Thus it appears that the case was not lost merely because of the theory of implied invitee, raised by Justice Eggleston at argument, but also upon a point as to

which the defendant hoped to secure reversal, and could, of course, so hope until rendition of the judgment—in 1946. Again, the Court held against the defendant in its contentions that the jury had been improperly instructed. From all of this, it is apparent that the quesion of implied invitee did not alone dispose of the case so that its suggestion on argument in 1945 can soundly be said to be basis for accrual in 1945 of the liability for the judgment rendered in 1946. We add that the supersedeas bond in the appellate court was effective until rendition of judgment in 1946, so that liability was until then suspended and might never have transpired.

The petitioner, it is expressly urged, did nothing more after the argument. It could of course as a practical matter do nothing except wait for the opinion of the court—except that as a practical matter it could have dismissed the appeal and paid, had it been so desirous, as now, of accruing the liability in 1945, and had not preferred to take chances of having the case reversed for misdirection of jury, or otherwise.

The petitioner, also, however, urges that in fact the Supreme Court of Appeals in December 1945 in conference unanimously decided that there was no error and that the lower court should be affirmed and assigned writing of opinion to Justice Eggleston, who drafted the opinion during December 1945. Again we say no practical test permits the matter to rest on such inner-sanctum procedure. The opinion so drafted was subject to approval by the whole court. It was not submitted for approval and did not receive such approval, so far as this record shows, in 1945, therefore was in no event the opinion of the whole Court, even informally, in that year. But more important, in our view, is the fact that the judgment was not rendered until January 14, 1946. We see nothing of practicality in a rule that would permit accrual of the amount of the judgment until that time. Such accrual would not, within Regulations 111, section 29.43-2, "clearly reflect the correct deduction" and the amount involved should, thereunder, be deducted in the year "when the claim is so adjudicated or paid"—in 1946. All the events had not in 1945 occurred to fix the amount and determine responsibility. Had the case been reversed for misdirection of jury, as petitioner had endeavored to accomplish by the appeal, the final amount, upon new trial, might have been different—as petitioner hoped it would be—or the case might have been settled. These contingencies are too real to be disregarded. It would in our opinion be unrealistic, the opposite of a practical test, to hold under the circumstances here, that the amount of $44,035.10 was accruable as a judgment of the appellate court in 1945.

We conclude and hold that the amount of the judgment, rendered and paid in 1946, was not accruable in 1945.

*Decision will be entered for the respondent.*