The **TEXAS MEXICAN RAILWAY COMPANY**

v.

**UNITED STATES of America.**

Civ. A. 761.

United States District Court
S. D. Texas,
Laredo Division.

Jan. 15, 1958.

Elmore H. Borchers, Laredo, Tex., for plaintiff.

Malcolm R. Wilkey, U. S. Atty., Arthur L. Moller, Asst. U. S. Atty., Houston, Tex., Charles K. Rice, Asst. Atty. Gen., James P. Garland, Robert H. Showen, Dept. of Justice, Washington, D. C., for defendant.

ALLRED, District Judge.

Action brought under Section 1346(a)(1) of Title 28 U.S.C.A. for refund of $43,375, corporate income tax paid by plaintiff railway company, (hereinafter called railroad), for the calendar year 1953. The claimed amount represented 52% of a state court judgment rendered against the railroad in 1952 for personal injuries sustained by one T. A. Bunn. The judgment did not become final and was not actually paid off until 1954; but in 1953, plaintiff placed $100,000 in escrow with a San Antonio bank as security for the execution of a supersedeas bond in order to appeal from the judgment. Plaintiff claims that this amounted to payment of the claim in 1953, citing Becker Bros. v. United States, 2 Cir., 7 F.2d 3, and Malleable Iron Range Co. v. United States, 65 Ct. Cl. 441, 6 A.F.T.R. 7469.

Plaintiff filed a claim with the Internal Revenue Service which was duly denied and all steps have been taken necessary to the court's jurisdiction. The facts have been stipulated.

On October 10, 1952, the state court judgment in favor of Bunn was rendered for $83,415, with interest from that date at 6%. The railroad's motion for new trial was filed November 5, 1952, and overruled by the trial court January 2, 1953. The railroad appealed to the Court of Civil Appeals at San Antonio. That court affirmed the judgment December 9, 1953 and overruled the railroad's second motion for rehearing in February 1954. The railroad's application for writ of error was finally denied by the Texas Supreme Court in July, 1954, thus ending the litigation. The judgment ($83,415), plus interest ($8,896) actually was paid off July 20, 1954.

However, in January, 1953, in order to supersede the judgment, the railroad had applied to Maryland Casualty Company for a supersedeas bond. The Casualty Company required that an escrow agreement be entered into whereby the railroad placed in escrow with the Frost National Bank of San Antonio the sum of $100,000, to indemnify the Casualty Company. As a result Maryland Casualty Company executed the supersedeas bond in the amount of $95,000, conditioned that the railroad would prosecute its appeal with effect and pay all costs which accrued in the court below.

The only question is whether the tax refund may be claimed for the year 1953 when plaintiff deposited in escrow the $100,000 to cover the eventual liability. The cases cited by plaintiff (Becker Bros. v. United States and Malleable Iron Range Co. v. United States, supra), clearly support plaintiff's contentions. Defendant contends, however, that those cases have been modified by the same circuit [1] and other decisions [2] since the decision in Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 203, 74 L.Ed. 538.[3] None of these cases involved, however, the placing in escrow of a sufficient amount to pay the judgment.

Lucas v. American Code Co., actually is, I think, authority for plaintiff under the facts here. In that case the taxpayer sought to deduct as a loss sustained in 1919, the amount of a judgment ($21,019.92) rendered in 1922 and not paid until 1923, because the breach of an employment contract, upon which the judgment was based, had occurred in 1919. The taxpayer had set up on its books a reserve equal to the commissions the employee would have earned for 1919 and another arbitrary amount for 1920. It did not, as here, deposit funds in escrow. The Court said:

"Generally speaking, the income tax law is concerned only with rea-lized losses, as with realized gains. Weiss v. Wiener, 279 U.S. 333, 335, 49 S.Ct. 337, 73 L.Ed. 720. Exception is made, however, in the case of losses which are so reasonably certain in fact and ascertainable in amount as to justify their deduction, in certain circumstances, before they are absolutely realized. As respects losses occasioned by the taxpayer's breach of contract, no definite legal test is provided by the statute for the determination of the year in which the loss is to be deducted. The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal, test. And the direction that net income be computed according to the method of accounting regularly employed by the taxpayer is expressly limited to cases where the Commissioner believes that the accounts clearly reflect the net income. Much latitude for discretion is thus given to the administrative board charged with the duty of enforcing the act."

In denying the claim the Court pointed out that the contract, for the breach of which the judgment was rendered, had nearly 18 years to run; that the amount of damages was *wholly unpredictable;* and "Finally, the Company did not accrue on its books, within the tax year, a liability in the estimated amount of the loss. *The reserve set up had no relation to the apprehended total loss.* It constituted simply the amount of the commissions which would have been payable in that year if Farquhar had remained in the Company's employ. That the Company did not *intend* the reserve to be an accrual of the total estimated loss is clearly indicated by the fact that, in 1920, it charged the reserve to cover the commissions which would have been payable in 1920, an additional amount, more than

---

1. Lehigh & Hudson River Ry. Co. v. Commissioner, 2 Cir., 38 F.2d 1015.

2. North American Coal Corp. v. Commissioner, 28 B.T.A. 807; Flannery v. Commissioner (1946 P-H. T.C. Mem. Decisions par. 46,103) ; Virginia Stage Lines, Inc. v. Commissioner, 16 T.C. 557.

3. Reversing American Code Co. v. Commissioner, 2 Cir., 30 F.2d 222.

double that charged in 1919." (Emphasis supplied.)

Here, in addition to the escrow deposit by the railroad in 1953, the parties stipulated [4] that the amount of the judgment, ($83,415), plus $6,000 attorney's and court costs, was accrued as a liability on the railroad's books for the calendar year 1952; that during 1953, plaintiff paid the attorney's fees and court costs ($6,000) and at the close of 1953, there remained on the books as a liability the $83,415 represented by the judgment. Thus, unlike the taxpayer in Lucas, supra, the amount of the liability was *not unpredictable* in 1953—on the contrary it had definitely been determined—sufficiently so that the taxpayer had deposited in excess of the amount in escrow; and here the railroad *had* accrued the amount as a liability after the escrow.

Regulation No. 118, Sec. 39.43–2, of the Internal Revenue Service, reads in part as follows:

" * * * Judgments or other binding adjudications, such as decisions of referees and boards of review under workmen's compensation laws, on account of damages for patent infringement, personal injuries, or other causes, are deductible from gross income when the claim is so adjudicated or paid, *unless taken under other methods of accounting which clearly reflect the correct deduction,* less any amount of such damages as may have been compensated for by insurance or otherwise * * *." (Emphasis supplied.)

The taxpayer's methods of accounting here clearly reflect the correct deduction and the railroad was entitled, *under the regulation,* as well as the decisions, to claim the refund for the year 1953.

Judgment will be for the plaintiff. The Clerk will notify counsel to submit an order accordingly.

---

4. The complete stipulation as to the manner in which the transaction was carried on the railroad's books is as follows:

"In the year's accounts ended December 31, 1952, the Plaintiff had accrued as a liability on its books $89,415.00 to the T. A. Bunn case. Of this amount, $83,415.00 represented the judgment rendered in the District Court against the Plaintiff on October 10, 1952, for alleged personal injury and property damage in accident at Laredo, Texas, December 16, 1951, to T. A. Bunn and $6,000 was for lawyers' fees and expenses in the case.

"The said amount of $89,415.00 was debited to Railway operating expenses in the year ended December 31, 1952, thus reducing the Plaintiff's net income transferred to Profit and Loss and to Surplus for that year to the extent of said amount. The $89,415.00 was included on the Liability Side of the Plaintiff's General Balance Sheet and in its Ledger under a heading captioned 'Account 778—Other Unadjusted Credits—T. A. Bunn Case.'

"During the year 1953, the Plaintiff paid the lawyers' fees and expenses, which it had accrued in 1952 for such fees and expenses thereby reducing the Liability by $6,000.00. Thus, at the close of the year's accounts ended December 31, 1953, there remained as a liability on the books of the Plaintiff $83,-415.00 which amount represented the judgment rendered against the Plaintiff and which the Plaintiff had accrued as a liability in 1952.

"On July 20, 1954, the Plaintiff paid T. A. Bunn and his Attorneys of Record the amount of the judgment rendered against it in the District Court on October 10, 1952, in the amount of $83,415.-00 and interest from October 10, 1952, to July 20, 1954, in the amount of $8,896.60. The $83,415.00 was debited to Account 778—Other Unadjusted Credits—T. A. Bunn case, to offset the amount accrued as a liability in the year ended December 31, 1952, and the $8,896.60 was debited to Account 551—Interest. Thus, at the close of the year's accounts ended December 31, 1954, the accrued liability was cleared on the books and records of the Plaintiff."