BUCKEYE INTERNATIONAL, INC., Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Buckeye International, Inc. v. Commissioner
Docket No. 25316-82.
United States Tax Court
T.C. Memo 1984-668; 1984 Tax Ct. Memo LEXIS 3; 49 T.C.M. (CCH) 376; T.C.M. (RIA) 84668; December 27, 1984. William W. Ellis, Jr., and Aaron P. Rosenfeld, for the petitioner. Mary Helen Weber, for the respondent. COHEN MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined the following deficiencies in petitioner's Federal income tax: Year
Deficiency
1974
$41,112
1975
210,667
1976
30,711
1977
10,401
Respondent filed an amendment to his answer in which he determined an additional deficiency for the year 1976 in the amount of $9,716.64. After concessions by petitioner, the sole issue for decision is whether petitioner may deduct certain accrued workers' compensation liabilities in the years 1975, 1976, 1977, and 1978. *5 [1]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner is a corporation and had its principal office in Worthington, Ohio, at the time it filed its petition herein. It filed income tax returns for the years 1975, 1976, 1977, and 1978 with the Internal Revenue Service Center in Cincinnati, Ohio. Petitioner manufactured steel castings and plastic parts for the automotive industry. During each of the years in issue, petitioner reported its income on the calendar year and utilized the accrual method of accounting. Petitioner was an employer subject to the Ohio Workers' Compensation Law, Ohio Rev. Code Ann. ch. 4123 (Page 1980). As a "self-insured" employer, petitioner paid the bi-weekly compensation provided under the Ohio statute directly to its employees who were injured and the defendant spouses and children of its employees who were killed in the course of employment. Petitioner contracted with several insurance companies to *6 limit its liability as a self-insured employer. Depending on the year of employee injury, these contracts indemnified petitioner from liability in excess of either $50,000 or $100,000 per employee as the result of any single event of disaster. During the years in issue, the Watson-Hill Company (Watson-Hill), an actuarial consultant, administered petitioner's self-insurance workers' compensation program. Watson-Hill's duties included reporting to and representing petitioner before the Ohio Industrial Commission (hereinafter sometimes referred to as the Industrial Commission or the Commission), which administers the state workers' compensation law, paying claims, and reporting back to petitioner. Watson-Hill also estimated the amount of petitioner's liability for workers' compensation payments. Watson-Hill determined the expected payments to each employee that the Industrial Commission declared to be permanently and totally disabled by multiplying the annual compensation ordered by the Commission by the employee's remaining life expectancy in years. For a surviving spouse, Watson-Hill multiplied the annual compensation ordered by the Commission by the remaining life *7 expectancy of the spouse. In computing expected payments to a dependent child, Watson-Hill multiplied the ordered compensation by the number of years remaining until the child's 18th birthday. Where petitioner was entitled to a partial refund from the state insurance fund because a pre-existing disease or condition contributed toward the employee's injury or death, Watson-Hill reduced the expected payments by the percentage of each payment that the state had agreed to reimburse petitioner. To determine the remaining life expectancies of injured employees and surviving spouses, Watson-Hill utilized the Commissioners 1958 Standard Ordinary Mortality Table (1958 CSO). Compiled by the insurance carrier industry, the 1958 CSO was based upon the length of life of life insurance policy holders and was commonly used to determine life insurance premiums. On its income tax returns for the years in issue, petitioner deducted accrued liabilities for workers' compensation payments to permanently and totally disabled employees and the dependents of deceased employees. The amount deducted with respect to each employee equaled the lesser of Watson-Hill's estimate of petitioner's unreimbursed *8 liability or petitioner's maximum remaining liability under the various insurance arrangements. With respect to all but two employees, this latter figure was lower than petitioner's initial uninsured liability because of payments made by petitioner prior to accrual. Petitioner also claimed a deduction with respect to one employee who was only partially disabled. Petitioner concedes on brief that such deduction was excessive. With one exception, petitioner reported the deductions in the year in which the Industrial Commission issued its orders. In the one exceptional case, petitioner deducted the accrued liability upon petitioner's agreement to make payments to an employee without a determination by the Commission. With respect to two employees, petitioner contested the Commission's orders through state court mandamus actions in subsequent years. Petitioner now concedes that accruing deductions with respect to these two employees while contesting its liability was improper. Respondent determined that petitioner's liability to make workers' compensation payments to permanently and totally disabled employees and the dependents of deceased employees was contingent *9 upon the happening of future events and that the amount of the liability could not be determined with reasonable accuracy. He therefore denied petitioner's accruals in full. The adjustments to petitioner's taxable income in respondent's statutory notice of deficiency equaled the difference between the amount accrued each year by petitioner and denied by respondent and the amount the Revenue Agent believed petitioner actually paid to the employees and their dependents in that year. The following table lists, according to the year of deduction, each employee with respect to whom petitioner accrued a deduction that remains in issue; Watson-Hill's estimate of petitioner's unreimbursed liability to each employee; the related maximum remaining liability of petitioner under the insurance arrangements; and the amount actually deducted by petitioner. Watson-Hill
Maximum Liability
Employee
Estimate
With Insurance
Deduction
1975
William Powers
$ 33,103
$50,000
$ 33,103
Claude Thompson
6,831
50,000
6,831
John Bester
95,458
24,851
24,851
Hazel Morton
9,750
44,377
9,750
Joe Carroll
117,470
33,618
33,618
Charles McDowall
68,304
31,027
31,027
William Smith
7,263
92,737
7,263
Billy Stiffler
188,177
84,122
84,122
Wayne Neff
101,978
88,360
88,360
Totals
$628,334
$318,925
1976
Charles Salyer
$ 29,081
$87,812
$ 29,081
Stewart Preece
93,708
34,124
34,124
William Caldwell
205,530
91,972
91,972
[2] William Stafford 41,531
91,945
41,531
Totals
$369,850
$196,708
1977
Francis Leonard
$146,906
$25,606
$ 25,606
[2] William Stafford 328,557
91,945
48,698
Totals
$475,463
$ 74,304
1978
Luther Bean
$ 87,498
$83,509
$ 60,509
Leroy Wiggins
30,107
45,007
31,854
[3] Leroy Wiggins 115,728
83,078
40,540
Totals
$233,333
$132,903
*10 ULTIMATE FINDINGS OF FACT All events that determined the fact of petitioner's liability to make workers' compensation payments with respect to the above employees had occurred in the years in which petitioner reported the deductions. The amount of petitioner's liability was determinable with reasonable accuracy in the years in which petitioner reported the deductions. OPINION Both petitioner and respondent agree that workers' compensation payments to permanently and totally disabled employees and the dependents of deceased employees are ordinary and necessary expenses in carrying on a trade or business, deductible under section 162. [4] The issue before us is when such payments are deductible -- in the year in which the Ohio Industrial Commission ordered petitioner to make the statutory payments or in *11 the year in which petitioner actually makes the payments. Section 461(a) requires that a taxpayer report a deduction in the taxable year that is proper under the method of accounting used in computing taxable income. Section 1.461-1(a)(2), Income Tax Regs., prescribes the proper year of deduction for an accrual basis taxpayer such as petitioner: Under an accrual method of accounting, an expense is deductible for the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy. * * * While no accrual shall be made in any case in which all of the events have not occurred which fix the liability, the fact that the exact amount of the liability which has been incurred cannot be determined will not prevent the accrual within the taxable year of such part thereof as can be computed with reasonable accuracy. * * * This familiar "all events" test consists of two parts: First, all events that determine the fact of liability *12 must have occurred as of the end of the year for which petitioner seeks to accrue the liability. * * * The second requirement is that as of the end of the year for which petitioner seeks to accrue the liability, petitioner must be able to estimate with reasonable accuracy the amount of the expenditure to be made in the subsequent year. * * * [Burlington Northern Railroad v. Commissioner,82 T.C. 143, 147 (1984).] To prevail on the issue before us, petitioner must prove that the accruals for workers' compensation satisfy both requirements of the all events test. See Ohio River Collieries Co. v. Commissioner,77 T.C. 1369 (1981); Southern Pacific Transportation Co. v. Commissioner,75 T.C. 497 (1980). We shall examine each requirement in turn. Fact of Liability
Respondent argues that petitioner has failed to satisfy this first prong of the all events test because petitioner's liability for workers' compensation payments was subject to various contingencies. He notes the possibilities that the recipients of the payments might die before receiving the full amounts accrued by petitioner; that dependent spouses *13 might remarry; that the Ohio Industrial Commission or a state court might subsequently reduce petitioner's liability; and that petitioner might be declared entitled to receive reimbursement from the state insurance fund subsequent to the year in which the Industrial Commission issued its order for payment in a particular case. Under Ohio law, the occurrence of any one of the above events may terminate or reduce in amount an employer's liability to make workers' compensation payments. Compensation to a permanently and totally disabled employee or to the surviving dependent spouse of a deceased employee is payable only until the death of the employee or spouse. Although an employer generally is obligated to make payments to a dependent child until the child reaches 18 years of age, the employer's obligation similarly terminates upon the death of the child. If a surviving dependent spouse remarries, the spouse is entitled to a lump sum payment equal to 2 years of biweekly compensation payments, but the employer is relieved of liability for any further payments. Ohio Rev. Code Ann. secs. 4123.58-4123.59 (Page 1980). The Ohio Industrial Commission *14 possesses "continuing jurisdiction" over a workers' compensation claim generally for a period ending 6 years after the injury, during which the Commission may modify its initial order. Decisions of the Commission may be challenged in state court through a statutory appeals procedure or through a separate mandamus action. Ohio Rev. Code Ann. secs. 4123.519-4123.52 (Page 1980). This Court considered the effect of potential beneficiary death and spousal remarriage upon the fact-of-liability determination in Wein Consolidated Airlines, Inc. v. Commissioner,60 T.C. 13 (1973), affd. 528 F.2d 735 (9th Cir. 1976). The taxpayer in Wien was an employer subject to the workers' compensation laws of Alaska. Upon the death of three of the taxpayer's pilots in airplane crashes, the taxpayer acknowledged its liability under the state statute and began making payments to the widows and children of the deceased pilots. As in the case before us, the taxpayer's liability to a surviving spouse terminated upon the remarriage of the spouse, and the taxpayer's liability to any beneficiary ended upon the death of the beneficiary. *15 We nevertheless concluded that all events that determined the fact of the taxpayer's liability to make workers' compensation payments had occurred in the year the employees died. Wien Consolidated Airlines, Inc. v. Commissioner,supra at 15. In concluding that the taxpayer's liability was fixed as defined in the regulation despite the possibilities of death or remarriage, we distinguished Thriftimart, Inc. v. Commissioner,59 T.C. 598 (1973), remanded without published opinion (9th Cir., Dec. 10, 1975), and Crescent Wharf & Warehouse Co. v. Commissioner,59 T.C. 751 (1973), revd. 518 F.2d 772 (9th Cir. 1975). In both Thriftimart and Crescent Wharf, we held that the taxpayers' liability to make workers' compensation payments under the California statute was not fixed upon injury to an employee. "The occurrence of the injury is but the first, although important, step in fixing petitioner's liability. It merely establishes the basis for the employee's claims against petitioner. In order for those claims to ripen, further events are necessary * * *." [Emphasis supplied.] Crescent Wharf & Warehouse Co. v. Commissioner,supra at 759. *16 "It is clear from the California law * * * that petitioner did not become liable for payment of any compensation to an employee until such employee actually incurred medical expenses or was away from work for a period in excess of 7 days." [Emphasis supplied.] Thriftimart, Inc. v. Commissioner,supra at 608. The taxpayers' liability under the California statute thus did not arise until the occurrence of future events. In Wien, by contrast, the occurrence of future events was not necessary to establish the taxpayer's liability under the Alaska statute. We concluded that the possibility that future events might extinguish the existing liability was irrelevant for the fact-of-liability inquiry. Wien Consolidated Airlines, Inc. v. Commissioner,supra at 15-16. [5]
*17 Wien thus requires that we distinguish between conditions precedent, which must occur before liability arises, and conditions subsequent, the occurrence of which will terminate an existing liability. Wien Consolidated Airlines, Inc. v. Commissioner,supra at 15. Only the former precludes a determination that the liability is fixed within the meaning of the regulation. The presence of the latter is not fatal to petitioner's satisfying the first requirement of the all events test. In the present case, petitioner's obligation to make workers' compansation payments to its permanently and totally disabled employee and the dependents of its deceased employees was fixed in the years in which petitioner reported the deductions. The orders of the Ohio Industrial Commission were the culmination of an elaborate administrative procedure for determining employer liability. See Ohio Rev. Code Ann. secs. 4123.513-4123.516 (Page 1980). In many instances this process was not completed and the Commission's order not issued until several years after the related injury or death of the employee. In the single instance in which *18 petitioner agreed, in the year of injury, to make payments without a determination by the Commission, the employee had suffered the loss of both legs and was therefore conclusively presumed to be permanently and totally disabled. Ohio Rev. Code Ann. sec. 4123.58 (Page 1980). Thus, when petitioner accrued the deductions in issue, no further events were necessary to establish its liability under Ohio law to make workers' compensation payments. Each of the contingencies noted by respondent were conditions subsequent which, if they occurred, would extinguish or reduce petitioner's existing liability under Ohio law. Although in Wien we did not explicitly address the possibility that various administrative and judicial bodies might subsequently reduce the taxpayer's liability, it appears that such contingencies existed in Wien. See Alaska Stat. secs. 23.30.125 (court review of administrative determinations), 23.30.130 (continuing jurisdiction of administrative agency until one year after last payment of compensation), 23.30.205 (reimbursement from state fund where employee suffered from pre-existing condition) (1962). *19 In the present case petitioner's liability remained as ordered by the Industrial Commission unless such events subsequently extinguished that liability. As respondent admits, the Commission's orders stated that payment was to continue for the prescribed period "unless future facts or circumstances should warrant the stopping of payment." [Emphasis supplied.] These contingencies thus are prototypical conditions subsequent to petitioner's liability. We therefore find the present case to be indistinguishable from Wien with respect to the fact-of-liability determination. Respondent does not attempt to distinguish Wien, but instead argues that Wien is "incorrect, logically unsound, and inconsistent with many long-standing Supreme Court decisions." Our review of the Supreme Court decisions cited by respondent indicates, however, that respondent has both misconstrued the Court's holdings and taken the Court's language out of its proper factual context. The Supreme Court cases relied upon by respondent fall into two general fact patterns. In the first group, the taxpayer accrued the deduction while contesting the liability. See Security Flour Mills Co. v. Commissioner,321 U.S. 281 (1944); *20 Lucas v. American Code Co.,280 U.S. 445 (1930). See also Dixie Pine Products Co. v. Commissioner,320 U.S. 516 (1944). Consistent with these decisions, this Court has long held that the fact of liability is not established where the taxpayer continues to contest the liability, in the courts or otherwise. See, e.g., Thriftimart, Inc. v. Commissioner,supra;Virginia Stage Lines, Inc. v. Commissioner,16 T.C. 557 (1951). With respect to the deductions remaining in issue, respondent does not contend that petitioner contested its liability to make workers' compensation payments after accrual of the deduction. Petitioner reported the accruals only in the year in which either petitioner entered into an agreement with the disabled employee or the Industrial Commission ordered petitioner to make payments. The line of "contested liability" cases is thus inapplicable to the present case. In the second line of cases cited by respondent, an accrual basis taxpayer received a gross amount of income that might be reduced upon the occurrence of subsequent events. See Schlude v. Commissioner,372 U.S. 128 (1963); *21 American Automobile Assn. v. United States,367 U.S. 687 (1961); Commissioner v. Hansen,360 U.S. 446 (1959); Brown v. Helvering,291 U.S. 193 (1934). The Supreme Court required in each case that the taxpayer report the full amount of income in the year received without reduction for the contingent loss. In Schlude and American Automobile Assn., the Court held that the taxpayers must include in income all prepayments received on service contracts, even though the taxpayers might later be required to render services under the contracts. Accord, RCA Corp. v United States,664 F.2d 881 (2d Cir. 1981). In Hansen the Court ruled that the taxpayers could not reduce their receipts from credit sales by an amount that various finance companies who factored the taxpayers' receivables withheld to secure the taxpayers' guarantees that the credit purchasers would make payments on the receivables. Similarly, the Court held in Brown that the gross amount of insurance commissions received must be reported as income without deduction for estimated refunds of commissions due to potential policy cancellations *22 in the future. Our opinion in Wien is wholly consistent with Schlude,American Automobile Assn.,Hansen, and Brown. In each of the Supreme Court cases, the fact of the taxpayer's liability was not established before the end of the taxable year. [6] In Schlude and American AutomobileAssn., the taxpayers had no obligation to perform services unless and until the recipient demanded such services. Schlude v. Commissioner,supra at 135. In Hansen the taxpayers were entitled to the full sales price unless the purchaser subsequently defaulted on his obligation. Commissioner v. Hansen,supra at 463. In Brown the taxpayer would be obligated to refund commissions only upon cancellation of the policies, an event that had not occurred at the end of the taxpayer year. As the Supreme Court stated in Brown: "[N]o liability accrues during the taxable year on account of cancellations which it is expected may occur in future years, since the events necessary to create the liability do not occur during the taxable year." (291 U.S. at 200.) Thus, in each of the cases cited by respondent, *23 liability would not arise until the occurrence of a condition precedent. See Kaiser Steel Corp. v. United States,717 F.2d 1304, 1307 (9th Cir. 1983). *24 Respondent also contends that Wien is inconsistent with our subsequent opinion in World Airways, Inc. v. Commissioner,62 T.C. 786 (1974), affd. 564, F.2d 886 (9th Cir. 1977). To the contrary, in World Airways we expressly followed the rule articulated in Wien.
The taxpayer in World Airways was required, under Federal Aviation Administration regulations, to overhaul its aircraft upon the completion of a prescribed number of flight-hours. The taxpayer entered into contracts pursuant to which the other contracting parties agreed to perform all overhauls on the taxpayer's aircraft. Although the contracts provided that the taxpayer's payments for the services were to be based upon the hours of flight time since the last previous overhaul, the taxpayer was not required to make any payments unless the other parties actually performed an overhaul. Arguing that its liability for overhal expenses was fixed because of the Federal Aviation Administration regulations requiring overhauls and the contracts obligating the taxpayer to pay for overhauls, the taxpayer attempted to deduct estimated overhaul expenses in years preceding the actual overhauls.
*25 In denying the taxpayer's deduction, we noted that the taxpayer "was under no obligation to make any payment unless an overhaul was actually performed" and that "[u]ntil an * * * [aircraft] has flown the applicable number of flight-hours, no obligation to overhaul arises." World Airways, Inc. v. Commissioner,supra at 802-803. Because the taxpayer's liability would not arise until the occurrence of these conditions precedent, we distinguished Wien and rejected the taxpayer's argument that various contingencies relating to its liability (such as the sale or permanent grounding of an aircraft before flight of the applicable hours) were conditions subsequent: Petitioner's argument assumes that liabilitiy is fixed in the year of accrual. The pertinent question is not whether the contingency defeating liability occurs after the year of accrual, but whether it occurs after the time when liability is fixed. The term "condition subsequent" refers to an occurrence which might diminish or terminate an existing liability. Such a contingency would not necessarily prevent a fixed liability from being properly accrued. Wien Consolidated Airlines, *26 Inc. * * *. * * * The occurrences of any of these contingencies [in the present case], however, would not relieve petitioner of an existing obligation to pay any overhaul costs. Rather, the occurrence would mean that no obligation to pay would ever come into existence. Petitioner has not shown that its liability for the accrued overhaul costs was absolutely fixed in the year of accrual. The contingencies referred to would act to prevent a potential liability from coming into existence. Hence, the contingencies are not "conditions subsequent" as petitioner suggests. [World Airways, Inc. v. Commissioner,supra at 803-804.] [7]
*27 does not provide a workable standard for characterizing contingencies. He asserts that the conditions in the present case could easily be characterized as conditions precedent. For example, respondent states: "A disabled employee or a survivor of a decedent must be alive before petitioner is required to pay them." While we do not doubt that it is possible to clothe a condition subsequent in language normally associated with conditions precedent, the true nature of the condition is unaffected by such a superficial recharacterization. Despite the language used by respondent, petitioner's liability came into existence upon the orders of the Industrial Commission. Death of the beneficiaries, as well as the other conditions in the present case, is an event which would subsequently terminate that liability. As Wien and World Airways illustrate, this Court is quite capable of distinguishing such conditions subsequent from conditions precedent necessary to establish the taxpayer's liability. We find the distinction between conditions precedent and conditions subsequent to be a most logical interpretation of the fact-of-liability requirement.With respect to this first *28 prong of the all events test, section 1.461-1(a)(2), Income Tax Regs., requires the taxpayer to prove that "all the events have occurred which determine the fact of liability." [Emphasis supplied.] The regulation does not require that the taxpayer prove the impossibility of the occurrence of subsequent events that might extinguish or reduce in amount an existing liability. As is illustrated by respondent's own brief, such a requirement would indeed be anomalous. In support of his argument that contingencies associated with petitioner's liability to make workers' compensation payments preclude petitioner's satisfying the fixed liability requirement, respondent states: "[T]here is no assurance that the taxpayer will remain in existence in the future to make all the payments it has accrued. Were its corporate life to end, it would never have to make the periodic future payments." Anytime a debtor incurs liability to make payments in the future, actual payment will be subject to analogous contingencies. Payment can never be certain until actually made. Respondent's interpretation of the regulation thus would virtually eliminate the accrual method of tax accounting. *29 Respondent's regulation provides a two-part test and clearly distinguishes between the fact of liability and payment on the liability. As long as the liability exists in the year of accrual, uncertainty as to the amount of ultimate payment is irrelevant for purposes of the first requirement of the all events test. [8]
We note that our holding herein that the orders of the Ohio Industrial Commission (and petitioner's agreement to make payments, in the one exceptional case) fixed petitioner's liability is significantly narrower than the decision of the Ninth Circuit Court of Appeals in Kaiser Steel Corp. v. United States,717 F.2d 1304 (9th Cir. 1983). Consistent with its earlier *30 opinion in Crescent Wharf & Warehouse Co. v. Commissioner,518 F.2d 772 (9th Cir. 1975), revg. 59 T.C. 751 (1973), the court in Kaiser Steel held that the fact of employee injury fixed the taxpayer's liability to make workers' compensation payments under California law. Kaiser Steel Corp. v. United States,supra at 1306-1308. Because petitioner in the present case did not accrue deductions for workers' compensation liabilities immediately upon employee injury, we need not decide whether such injury was sufficient to establish petitioner's liability. Reasonable Accuracy
Although petitioner has satisfied the first requirement for accrual of a deduction, petitioner must also prove that the amount of workers' compensation liability could, at the end of the years of accrual, be determined with reasonable accuracy. Burlington Northern Railroad v. Commissioner,82 T.C. 143, 147 (1984); sec. 1.461-1(a)(2), Income Tax Regs. Predictability of actual payment on the liability is thus crucial with respect to this second prong of the all events test. Contrary to respondent's assertions, however, where the *31 fact of liability is established, the exact amount of the liability need not be known with absolute certainty. "It is true that, where a liability has 'accrued during the taxable year,' it may be treated as an expense incurred; and hence a basis for a deduction * * * although the amount of the liability has not been definitely ascertained." Brown v. Helvering,291 U.S. 193, 200 (1934). See also Lucas v. American Code Co.,280 U.S. 445, 449-450 (1930); Hilinski v. Commissioner,237 F.2d 703, 705 (6th Cir. 1956); Harrold v. Commissioner,192 F.2d 1002 (4th Cir. 1951); Ohio River collieries Co. v. Commissioner,77 T.C. 1369, 1377 (1981). The regulation expressly provides for the possibility that the taxpayer might accrue a deduction pursuant to a reasonably accurate estimate from which actual payments ultimately differ: Where a deduction is properly accrued on the basis of a computation made with reasonable accuracy and the exact amount is subsequently determined in a later taxable year, the difference, it any, between such amounts shall be taken into account for the latter taxable year *32 in which such determination is made. [Sec. 1.461-1(a)(2), Income Tax Regs.] "The question of whether the amount of liability can be determined with reasonable accuracy is a question which must be resolved by the trial court upon evidence presented in the trial court." Kaiser Steel Corp. v. United States, an unreported case ( N.D. Cal. 1982, 50 AFTR 2d 82-6020, 82-6032, 82-2 USTC par. 9635, 85,321), affd. 717 F.2d 1304 (9th Cir. 1983). Based on the evidence presented herein, we find the present case indistinguishable from Wien Consolidated Airlines, Inc. v. Commissioner,supra, with respect to the benefits payable to dependent children of deceased employees. As previously discussed, under Alaska law, payments to a child would terminate upon the child's death. Yet, like petitioner, the taxpayer in Wien made no adjustment to the estimated payments for the possibility of the dependent children dying before reaching age 19 (when the statutory payments would end in any event). We nevertheless held that "the likelihood that the children will die before attaining age 19 is not such that the amount of petitioner's *33 liability for payments to the children cannot be determined with reasonable accuracy." Wien Consolidated Airlines, Inc. v. Commissioner,supra at 17. Respondent asserts that various factors prevented petitioner from computing the amount of its liability with reasonable accuracy. He first argues that the orders of the Ohio Industrial Commission might be modified, and petitioner's liability reduced, by subsequent decisions of the Commission or a state court. Respondent further argues that the 1958 CSO did not produce reasonably accurate life expectancies of disabled employees and surviving spouses because the table reflected the expected lives of insurance policy owners, "a group of relatively affluent individuals of average health," and because the table ignored "differences in life expectancy caused by racial or sexual differences." With respect to disabled employees, respondent contends that the various disabilities will probably shorten the employees' lives. With respect to surviving spouses, respondent notes that Watson-Hill made no adjustment for the possibility of remarriage, which would terminate petitioner's liability to make periodic payments. We *34 conclude that petitioner has satisfied its burden of proof on this issue. At trial petitioner called three witnesses -- James R. Hagans, president of Watson-Hill and experienced in Ohio workers' compensation procedures, James B. Hughes, Jr., vice president of the firm that became petitioner's actuarial consultant beginning in 1980, and Robert James Finger, an expert in actuarial science. The testimony of each of these witnesses supports the accuracy of the amounts accrued by petitioner and provides specific evidence to rebut respondent's assertions. Respondent, by contrast, presented virtually no evidence in support of his contentions. The evidence of record contradicts respondent's assertion that the possibility of the Ohio Industrial Commission or a state court reducing petitioner's liability subsequent to the year of accrual precluded petitioner from calculating the amount of its liability with reasonable accuracy. Hagans testified that Watson-Hill made no adjustment to petitioner's estimated liability for a possible redetermination by the Commission because he "had never seen" the Commission make a redetermination. Hagans further stated that the determination of *35 an employer's entitlement to reimbursement from the state fund (due to the employee's suffering from a pre-existing condition) almost always occurs before the Industrial Commission issues its order. [9] Although petitioner could have challenged the Commission's orders in state court and thereby possibly reduced its liability, the mere existence of this avenue of appeal did not render uncertain petitioner's liability as ordered by the Commission in cases where petitioner did not further contest its liability. Hagans, Hughes, and Finger all testified that use of the 1958 CSO produced a reasonably accurate estimate of petitioner's liability. Hughes stated that the life expectancy table used by his firm prior to *36 1980 produced higher life expectancy values than the 1958 CSO. Respondent's speculation concerning the effect of disability upon life expectancy is unsupported by the record. Hagans testified that the injuries suffered by the employees in the present case would probably have little effect upon life expectancies. Finger prepared for the State of Ohio a table of life expectancies of persons declared permanently and totally disabled. The remaining life expectancy of an individual age 31 years was only 4 years lower in Finger's table than in the 1958 CSO, and this differential between the two tables decreased with the individual's age. Moreover, Hagans testified that where a disabled employee dies of causes related to the injury, the chances of the employee's dependents successfully asserting a death claim would be "very, very strong." Thus the premature death of an employee might merely result in petitioner making payments to the dependents instead of the employee. Cf. Lukens Steel Co. v. Commissioner,52 T.C. 764 (1969), affd. 442 F.2d 1131 (3d Cir. 1971). We held in Wien that the taxpayer failed to prove that the amount of its liability *37 to the surviving spouses had been reasonably ascertained because the taxpayer did not consider the possibility of remarriage. Wien Consolidated Airlines, Inc. v. Commissioner,supra at 17. In contrast to the taxpayer in Wien, petitioner herein offered specific evidence in support of the accuracy of the accruals with respect to the spouses. Finger testified that, for a surviving spouse age 50 or older, the use of a life expectancy table without adjustment for possible remarriage would probably result in an estimate only "about 10 percent off." During the years in issue, petitioner accrued liabilities for payments to three surviving spouses, whose ages at the time of accrual were 58, 53, and 38 years. We might expect the probability of remarriage of the 38-year-old spouse, the widow of William Stafford, to be higher than that indicated by Finger's testimony. The insurance arrangements maintained by petitioner, however, limited petitioner's liability, and hence its deduction, with respect to Stafford's widow to $48,698. This figure represents less than one-sixth of Watson-Hill's estimate of liability based upon the spouse's life expectancy. We also *38 note the provision in the Ohio statute entitling a spouse who remarries to a lump sum payment equal to 2 years of periodic payments. Ohio Rev. Stat. Ann. sec. 4123.59(B)(1) (Page 1980). The insurance arrangements carried by petitioner support the accuracy of petitioner's accruals with respect to the other beneficiaries as well. During the 4-year period in issue, Watson-Hill's estimates totaled $1,706,980, whereas the insurance contracts limited petitioner's deductions to a total of $722,840. The insurance arrangements thus substantially limited petitioner's liability and rendered the amount of liability estimable with reasonable accuracy. Because petitioner introduced evidence in support of the accuracy of those estimates, respondent cannot prevail merely by asserting that petitioner could have computed the estimates with greater accuracy. Respondent must present evidence of his own indicating that the amounts deducted by petitioner would have been significantly different had petitioner utilized a "more accurate" method of estimation. Respondent did not attempt to do this in the present case. Other Arguments
Respondent raises several arguments which indicate *39 his dissatisfaction with the accrual method of tax accounting. Respondent asserts, for example, that petitioner has attempted to deduct a reserve and that "[i]n the absence of specific statutory authorization, federal income tax deductions for reserves for future liability are not permitted." We agree that a taxpayer may not deduct estimated future expenses for which liability does not exist. See, e.g., Thor Power Tool Co. v. Commissioner,439 U.S. 522 (1979). Nowhere does respondent define the term "reserves," however. Simply using the term to describe the deductions in issue is insufficient to bring the present case within the rule of law cited by respondent. Where, as in the current case, the liability in question satisfies both requirements of the all events test, accrual is proper despite the label used by respondent. Respondent similarly asserts that petitioner did not actually set aside money in a sinking fund and that the full amounts accrued by petitioner have not yet been paid. Although respondent's assertions are accurate, these facts do not preclude accrual under the all events test. Indeed, the separation in time of the deduction of *40 an expense and its actual payment is an inherent characteristic of the accrual method of accounting. We note that Congress has recently amended section 461 to accord with respondent's views. [10] Congress did not, however, make the amendment retroactive to the years in issue. Tax Reform Act of 1984, Pub. L. 98-369, sec. 91(g), 98 Stat. 494, 608. The legislative history surrounding the amendment indicates that Congress intended to change the law existing at the time of the amendment: The courts generally have held that the length of time between accrual and performance does not affect whether an amount is properly accruable. * * * * * * The committee believes that the rules relating to the time for accrual of a deduction by a taxpayer using the accrual method of accounting should be changed to take into account the time value of money. * * * [S. Rept. No. 169, 98th Cong., 2d Sess. 265, 266 (1984); H. Rept. No. 432, 98th Cong., 2d Sess. 1253, 1254 (1984).] *41 Decision will be entered under Rule 155.
Footnotes
1. The deduction for 1978 is in issue because of a claimed net operating loss carryback to 1975.↩
2. In 1976 the Ohio Industrial Commission ordered petitioner to make payments to one of Stafford's daughters. In 1977 the Commission ordered petitioner to make payments to Stafford's widow and a second daughter. ↩
3. Wiggins suffered two separate injuries for which the Industrial Commission entered separate orders for permanent and total disability payments.↩
4. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
5. In Wien Consolidated Airlines, Inc. v. Commissioner,60 T.C. 13 (1973), affd. 528 F.2d 735 (9th Cir. 1976), we similarly distinguished Trinity Construction Co. v. United States,424 F.2d 302 (5th Cir. 1970), cited by respondent. We concluded that, on the unique facts of Trinity, survival of the insured under a life insurance policy was an event that must occur before the taxpayer would be liable for the payment of annual premiums. Wien Consolidated Airlines, Inc. v. Commissioner,supra↩ at 15.
6. Although Schlude v. Commissioner,372 U.S. 128 (1963), American Automobile Assn. v. United States,367 U.S. 687 (1961), and Commissioner v. Hansen,360 U.S. 446 (1959), involved the proper reporting of income and not the accrual of deductions, this Court has recognized that similar considerations apply with respect to both issues. Simplified Tax Records, Inc. v. Commissioner,41 T.C. 75, 79 (1963) (citing Commissioner v. Milwaukee & Suburban Transport Corp.,367 U.S. 906 (1961), on remand 293 F.2d 628 (1961)). We also note that in Schlude, American Automobile Assn., and Hansen, the Supreme Court relied upon the Commissioner's power, under sec. 446(b) and its predecessor, to recompute the taxpayer's taxable income where the taxpayer's method of accounting does not clearly reflect income. Respondent does not invoke sec. 446(b) in the present case. Cf. Mooney Aircraft, Inc. v. United States,420 F.2d 400↩ (5th Cir. 1969) (holding that accrual of deduction was not prohibited by all events test but Commissioner properly denied deduction under sec. 446(b)).
7. Bennett Paper Corp. v. Commissioner,78 T.C. 458 (1982), affd. 699 F.2d 450 (8th Cir. 1983), cited by respondent, is similarly distinguishable from Wien and the case now before us. In Bennett Paper we did not expressly classify the taxpayer's contingent liability to make payments under an employee bonus plan as subject to a condition precedent. Under the requirements of the plan, however, an employee's right to and therefore the taxpayer's liability for payments did not arise unless the employee was employed by the taxpayer on a fixed date after the year in which the taxpayer attempted to accrue the deduction. Bennett Paper Corp. v. Commissioner,supra at 461. See also Nightingale v. United States,684 F.2d 611↩ (9th Cir. 1982).
8. Preserving the distinction between the two requirements of the all events test also properly precludes the taxpayer from accruing a deduction where the fact of liability is not yet established, although the taxpayer can estimate with reasonable accuracy future payments that will occur after the liability is fixed. See Brown v. Helvering,291 U.S. 193 (1934); Supermarkets General Corp. v. United States,537 F. Supp. 759↩ (D.N.J. 1982).
9. According to Hagans, Ohio law does not mandate that the reimbursement determination be made before the order of the Industrial Commission. Hagans testified, however, that his clients' interest in maximum cash flow necessitated Watson-Hill's securing reimbursement from the state as early as possible. Moreover, with respect to the accruals in issue, there is no evidence of the reimbursement determination ever being made after the order of the Commission.↩
10. In the Tax Reform Act of 1984, Pub. L. 98-369, sec. 91(a), 98 Stat. 494, 598, Congress added sec. 461(h) to the Code, which provides in pertinent part: (h) Certain Liabilities Not Incurred Before Economic Performance.-- (1) In general.--For purposes of this title, in determining whether an amount has been incurred with respect to any item during any taxable year, the all events test shall not be treated as met any earlier than when economic performance with respect to such item occurs. (2) Time when economic performance occurs.--Except as provided in regulations prescribed by the Secretary, the time when economic performance occurs shall be determined under the following principles: * * * (C) Workers compensation and tort liabilities of the taxpayer.--If the liability of the taxpayer requires a payment to another person and-- (i) arises under any workers compensation act, or (ii) arises out of any tort, economic performance occurs as the payments to such person are made. * * *↩